# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 04/14/2021 10:49 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Hernandez,Deputy Clerk

19STCV39732

**SUM-100**

# SUMMONS SECOND AMENDED COMPLAINT
## (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

RECEIVED
AMERICAN RED CROSS

APR 19 2021

OFFICE OF GENERAL COUNSEL

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SUMMERKIDS, INC., a California Corporation; MARIA DIMASSA, an individual; JOSEPH DIMASSA, an individual; (See Attachment) **(Additional Parties Attachment Form is Attached)**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ELENA MATYAS, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES; DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court, 312 North Spring Street, Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):*<br>19STCV39732 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

DATE: 04/14/2021
*(Fecha)*

Sherri R. Carter Executive Officer / Clerk of Court

Clerk, by J. Hernandez , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☒ as the person sued under the fictitious name of (specify): American National Red Cross also known as the American Red Cross
3. ☒ on behalf of (specify): 

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
          ☒ other (specify): Non-profit, Tax-Exempt charitable corporation
4. ☐ by personal delivery on (date):

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

| SHORT TITLE: | | **SUM-200(A)** |
|---|---|---|
| Matyas; et al. v. Summerkids, Inc, et al. | CASE NUMBER: | |
| | 19STCV39732 | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff  [X] Defendant  [ ] Cross-Complainant  [ ] Cross-Defendant

CARA DIMASSA, an individual; GIANCARLO DIMASSA, M.D., an individual; ANGELUS MOUNTAIN CENTER, entity type unknown; THE ENOTECA, LLC, a California Limited Liability Company (AKA THE ENOTECA, LLC, a California Limited Liability Company); SEMPRE AVANTI, LLC, and California Limited Liability Company; THE DIMASSA FAMILY FOUNDATION, a 501(c)(3) corporation; JAIMI HARRISON, an individual; JOSEPH NATALIZIO, an individual; DANIEL H. RAINEY, an individual; FAITH PORTER, an individual; ANDREW LARA CERVANTES, an individual; and DOES 1 through 50, inclusive

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

[ Print this form ]  [ Save this form ]  [ Clear this form ]

EXHIBIT 2



1  Victor L. George, State Bar No. 110504
   Meylin P. Alfaro, State Bar No. 315177
2  LAW OFFICES OF VICTOR L. GEORGE
   20355 Hawthorne Blvd., First Floor
3  Torrance, California 90503
   Telephone:      (310) 698-0990
4  Facsimile:      (310) 698-0995
   E-mail:         vgeorge@vgeorgelaw.com
5                  malfaro@vgeorgelaw.com

6  Attorneys for Plaintiffs ELENA MATYAS
   and DOUGLAS FORBES

7

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     FOR THE COUNTY OF LOS ANGELES

11

12  ELENA MATYAS, individually and as Successor-in-      CASE NO.:  19STCV39732
    Interest to ROXIE MIRABELLE FORBES; and DOUGLAS
13  FORBES, individually and as Successor-in-Interest to
    ROXIE MIRABELLE FORBES;                              SECOND AMENDED COMPLAINT FOR
14                                                        DAMAGES:

15                  Plaintiffs,                           1.   NEGLIGENCE – WRONGFUL
                                                               DEATH
16         v.                                            2.   NELIGENT HIRING, RETENTION,
                                                               SUPERVISION, AND TRAINING
17  SUMMERKIDS, INC., a California Corporation; MARIA     3.   SURVIVOR'S ACTION
    DIMASSA, an individual; JOSEPH DIMASSA, an           4.   FRAUD
18  individual; CARA DIMASSA, an individual;
    GIANCARLO DIMASSA, M.D., an individual; ANGELUS
19  MOUNTAIN CENTER, entity type unknown; THE
    ENOTECA, LLC, a California Limited Liability Company
20  (AKA THE ENOTECA, LLC, a California Limited Liability
    Company); SEMPRE AVANTI, LLC, and California
21  Limited Liability Company; THE DIMASSA FAMILY
    FOUNDATION, a 501(c)(3) corporation; JAIMI
22  HARRISON, an individual; JOSEPH NATALIZIO, an
    individual; DANIEL H. RAINEY, an individual; FAITH    DEMAND FOR JURY TRIAL
23  PORTER, an individual; ANDREW LARA CERVANTES,
    an individual; and DOES 1 through 50, inclusive,
24                  Defendants.                           Complaint filed:  November 5, 2019
                                                          Trial Date:        December 13, 2021
25

26

27

28

Electronically Received 04/01/2021 11:17 PM

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  COMES NOW PLAINTIFFS ELENA MATYAS, individually and as Successor-in-Interest to

2  ROXIE MIRABELLE FORBES; and DOUGLAS FORBES, individually and as Successor-in-Interest to

3  ROXIE MIRABELLE FORBES ("PLAINTIFFS"), to complain and allege against Defendants

4  SUMMERKIDS, INC., a California Corporation ("SUMMERKIDS"); MARIA DIMASSA, an individual;

5  JOSEPH DIMASSA, an individual, CARA DIMASSA, an individual; GIANCARLO DIMASSA, M.D., an

6  individual; GIANCARLO DIMASSA, M.D., P.C., a professional medical corporation;   (MARIA

7  DIMASSA, JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA are collectively referred

8  to herein as "THE DIMASSAS"); the TRUSTEE OF THE DIMASSA FAMILY TRUST, hereinafter

9  "FAMILY" TRUST, ANGELUS MOUNTAIN CENTER, entity type unknown; THE ENOTECA, LLC, a

10  California Limited Liability Company (AKA ENOTECA DIMASSA, LLC, a California Limited Liability

11  Company);  SEMPRE AVANTI, a California Limited Liability Company; THE DIMASSA FAMILY

12  FOUNDATION, a 501(c)(3) corporation (SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER,

13  THE ENOTECA, SEMPRE AVANTI, and THE DIMASSA FAMILY FOUNDATION, are collectively

14  referred to herein as the "DIMASSA ENTITIES"); JAIMI HARRISON, an individual; JOSEPH

15  NATALIZIO, an individual; DANIEL H. RAINEY, an individual; FAITH PORTER, an individual;

16  NATALIE DEL CASTILLO. an individual; ANDREW LARA CERVANTES, an individual; TREVOR

17  BOREHAM, an individual, hereinafter BOREHAM; LIFE SAVING CERTIFIED, business form

18  unknown(hereinafter LSC); THE AMERICAN NATIONAL RED CROSS also known as the

19  AMERICAN RED CROSS, a non-profit, tax -exempt, charitable corporation (hereinafter referred

20  to as "ARC"), and DOES 1 through 50, inclusive, and each of them, ("DEFENDANTS") as follows:

21

22

23

24  ///

25  ///

26  ///

27  ///

28  ///

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**INTRODUCTION**

1.    On or about June 28, 2019 six-year-old ROXIE MIRABELLE FORBES ("ROXIE") tragically perished, not as a result some unforeseen or unstoppable cause, but as a direct result of the grossly negligent, willful and fraudulent misconduct of DEFENDANTS.



2.    On or about June 28, 2019, while attending Summerkids Camp under the direct care and supervision of DEFENDANTS, ROXIE drowned in a swimming pool at ANGELUS MOUNTAIN CENTER, the 57-acre home of Summerkids Camp located at 3697 N. Fair Oaks Ave., Altadena, CA 91001, which was at all operative times, controlled, owned, supervised and managed by the DEFENDANTS.  Consequently, PLAINTIFFS ELENA MATYAS ("MATYAS") and DOUGLAS FORBES ("FORBES") bring this complaint for (1) Wrongful Death, (2) Negligent Hiring, Retention, Supervision and Training, (3) Survivor's Action, and (4) Fraud against DEFENDANTS and DOES 1-50 arising out of the tragic events that form the basis of this lawsuit.

3.    In February 2019, PLAINTIFFS MATYAS and FORBES applied for ROXIE to attend the Summerkids Camp.   On March 1, 2019, Plaintiff MATYAS received an email from SUMMERKIDS, INC. advising her that ROXIE was accepted to attend the Summerkids Camp. ROXIE's parents signed up their six-year-old daughter to attend camp for eight (8) weeks in the summer of 2019.

4.    THE DIMASSAS and the DIMASSA ENTITIES advertised that Summerkids Camp was a safe place to send young children with allegedly American Red Cross trained lifeguards and competent camp personnel. Specifically, THE DIMASSAS and the DIMASSA ENTITIES represented that non-swimmers would be carefully and specifically monitored, and that the allegedly American Red Cross trained lifeguards and counselors would assist the children by introducing swim techniques with a goal of making the children "water safe."  As such, PLAINTIFFS were

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    assured that the allegedly American Red Cross trained lifeguards and counselors with American

2    Red Cross water safety training were always present while children participated in swimming

3    activities, and that counselors and lifeguards worked with children who were not water safe to

4    make them water safe.

5        5.      Additionally, THE DIMASSAS and the DIMASSA ENTITIES represented that

6    Defendants GIANCARLO DIMASSA, M.D., dba GIANCARLO DIMASSA, M.D., P.C., an emergency

7    medicine physician, was a staff member of Summerkids Camp.

8        6.      PLAINTIFFS employed and trusted the specialized services of DEFENDANTS, and

9    each of them, including DOES 1-50 to supervise and care for their six-year-old daughter ROXIE,

10   who was attending summer camp for the first time.  On the first day of Summerkids Camp,

11   Defendants' and their staff assessed ROXIE'S ability to swim, concluded that she was a "non-

12   swimmer," and restricted her to the steps in the shallow end of the swimming pool.  Defendants

13   communicated these restrictions to PLAINTIFFS, and PLAINTIFFS relied on those restrictions in

14   permitting ROXIE to attend Summerkids Camp and participate in the water activities.

15   DEFENDANTS, and each of them, including DOES 1-50, were aware that ROXIE was a "non-

16   swimmer" and not "water safe." Defendants were also informed and aware that ROXIE was

17   diagnosed with gross motor delay. JAIMI HARRISON, the Assistant Director of Summerkids Camp,

18   represented to PLAINTIFFS that she would personally speak with the lifeguards and counselors

19   to ensure they were aware of ROXIE'S medical condition and status as a "non-swimmer."  On or

20   about June 26, 2019, CARA DIMASSA personally acknowledged to ROXIE'S mom, MATYAS, that

21   ROXIE needed special attention, and assured her that Defendants were qualified and able to

22   provide this special attention.

23       7.      On June 28, 2019 PLAINTIFFS dropped ROXIE off at Summerkids Camp, which is a

24   local day camp and not a sleepover camp.  Her first activity of the morning was swimming.

25   According to witness accounts ROXIE entered the pool between 9:20 and 9:25 a.m.  ROXIE was

26   placed on the swimming pool steps by her "buddy counselor" DANIEL H. RAINEY also known as

27   "Hank" ("RAINEY") who was an allegedly ARC trained lifeguard with additional water safety

28   training, CPR, and AED.

4

8.     DEFENDANTS, and each of them, including DOES 1-50, knew it was unsafe for ROXIE to have full access to the pool, but the Summerkids Camp staff including counselors and lifeguards did nothing to actually restrict ROXIE to the steps or shallow end.  Rather than safeguard ROXIE, RAINEY, and JOSEPH NATALIZIO ("NATALIZIO"), who was an allegedly ARC trained lifeguard with additional water safety training, CPR, and AED, were distracted and preoccupied with other campers at the time of the tragic drowning.

9.     At approximately 9:35 a.m., about ten (10) to fifteen (15) minutes after ROXIE entered the swimming pool, Robert Antonucci, a counselor who was working with other campers about thirty (30) to forty-five (45) feet outside the gate of the swimming pool was the first person to finally notice ROXIE floating face down in the pool.  When Robert Antonucci saw ROXIE, she was floating approximately twenty (20) feet away from the steps in four (4) to four-and-a-half (4.5) feet of water.

10.     On June 28, 2019, one or more of THE DIMASSAS, and employees, agents, and other personnel of the DIMASSA ENTITIES were present at the scene of ROXIE'S tragic death. However, GIANCARLO DIMASSA, M.D. was not present at the Summerkids Camp this day and did not provide any care whatsoever to ROXIE, instead Defendant GIANCARLO DIMASSA, M.D. was actually in Hawaii at the time of ROXIE'S drowning and no doctor or other medical personnel was scheduled by the Defendants at Summerkids camp to take his place.

11.     The Summerkids Campers, including ROXIE, were under the immediate and direct care and supervision of DEFENDANTS, and each of them, including DOES 1-50 who lacked the requisite experience to safely supervise the pool area and to render aid to young swimmers and particularly non swimmers in emergency situations.

12.     The allegedly ARC trained lifeguards and/or counselors, who were employees of Defendant SUMMERKIDS, INC., present in and around the swimming pool were completely oblivious to ROXIE's safety. DEFENDANTS and each of them, and DOES 1 – 50, demonstrated a conscious disregard for ROXIE, constituting a lack of any care and/or an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to ROXIE and/or other campers, constituting gross negligence. Due to the inattentiveness, negligence, and

5

1   gross negligence of DEFENDANTS, and each of them, including DOES 1-50 and in the absence of

2   competent, trained, and attentive staff (i.e. counselors and lifeguards), ROXIE died from a

3   preventable drowning.  This tragedy occurred as a direct and proximate result of SUMMERKIDS,

4   INC.'S, THE DIMASSAS' and DIMASSA ENTITIES' negligent hiring of inadequately trained and

5   incompetent personnel, and failure to adequately provide a safe environment for campers.

6         13.    PLAINTIFFS are informed and believe and allege, that the deficiencies of

7   Defendants, and DOES 1-50 and each of them, included, but were not limited to:

8         •      Improper hiring and training of lifeguards, resulting in incompetent lifeguard

9   personnel being "on duty" when young children were in the pool;

10        •      Inadequate number of personnel staffing Summerkids Camp;

11        •      Inadequate emergency action plan, or absence of such protocols;

12        •      Lack of training of counselors and lifeguards regarding the assignment of specific

13  children to specific counselors, including non-swimmers such as ROXIE, which would have

14  required the counselors to observe, monitor and protect the children in their care;

15        •      Failure to adequately observe, monitor, supervise, and/or protect children

16  campers during "recreational swim time," resulting in increased and potentially life-threatening

17  danger to the children;

18        •      Administering insufficient swim tests to ascertain swimming skill levels of

19  campers; failure to monitor the campers and ensure they swam only in the section of the pool

20  for which their ability allowed, resulting in increased and potentially life-threatening danger to

21  the children; and

22        •      Improper pool activities; inadequate water safety and CPR training, procedures

23  and equipment;

24        •      Providing childcare without a license and without meeting the criteria to be

25  license exempt in violation of California Health and Safety Code Sections 1596.80 and 1596.805.

26        14.    Accordingly, despite DEFENDANTS and each of them, including DOES 1-50, having

27  a responsibility for ROXIE's safety and/or being on actual duty to watch over ROXIE, and the

28  campers as required, ROXIE was found floating face down in the pool for an extended period of

1    time with absolutely no intervention by Defendants and each of them.

2        15.    PLAINTIFFS are informed and believe, and on that basis allege, that after learning

3    911 had been called, Defendant CARA DIMASSA never left her office to assist counselors and staff

4    in the aftermath of ROXIE'S drowning. PLAINTIFFS are further informed and believe, and on that

5    basis allege, that Defendant GIANCARLO DIMASSA, M.D. was either not present at the camp at

6    the time of ROXIE'S death, or chose not to perform CPR.

7        16.    When paramedics arrived on the scene, they found ROXIE lifeless, without a pulse,

8    in full cardiac arrest.  After approximately forty (40) minutes of extensive treatment, emergency

9    room doctors resuscitated her, and ROXIE was put on life support, she remained in the hospital

10   on life support until June 29, 2019 when she was removed from life support and died as a result

11   of a preventable drowning.

12       17.    Seemingly unfazed by the circumstances surrounding the death of ROXIE, the

13   Summerkids Camp remained open throughout the day of her drowning and did not modify its

14   operations except to close the pool area at the direction of the County of Los Angeles until nine

15   (9) violations were resolved.    THE DIMASSAS went to Huntington Hospital. CARA DIMASSA

16   entered the trauma room without permission and told PLAINTIFFS that ROXIE was at fault for her

17   own drowning.  This willful, inappropriate conduct caused great emotional harm to PLAINTIFFS.

18       18.    At all times herein Defendants and each of them and DOES 1 -50, represented to

19   the Plaintiffs that the lifeguards at SUMMERKIDS, INC. were fully trained in water safety and were

20   certified ARC lifeguards. Defendants and each of them intentionally misrepresented to Plaintiffs

21   that each and every lifeguard at SUMMERKIDS, INC.  had fully completed all of the training that

22   ARC had required in its written manual materials.  In fact, Defendants, including ARC and

23   CERVANTES, were not requiring in actual practice that ARC authorized instructors, including but

24   not limited to CERVANTES, to follow ARC written protocols, such that none of the alleged ARC

25   lifeguards at Summerkids Camp had received even one third of the required training in water

26   safety and lifeguarding as indicated by ARC's written materials and fraudulently verified by ARC's

27   certification of said Defendant lifeguards, as well as the fraudulent certification by Cervantes and

28   ARC of Defendant JOE DIMASSA as a certified an ARC Water Safety Instructor. Defendants and

7

1   each of them misrepresented to the public, including the Plaintiffs, that said lifeguards at

2   Summerkids, Inc. had received the full ARC water safety and lifeguard training. In truth, said

3   Defendants concealed from the public, including the Plaintiffs, that the lifeguards at

4   SUMMERKIDS, INC. camp had not received the complete ARC water safety and lifeguard training,

5   but had only received a third of such training, creating an extremely dangerous condition for all

6   swimmers, and especially non swimmers such as ROXIE, at SUMMERKIDS, INC. camp. As a result

7   of these fraudulent misrepresentations and concealment of the fact that the Summerkids, Inc.

8   lifeguards had not received the full ARC training, as ARC written materials required and said

9   lifeguards ARC certifications falsely indicated, the Plaintiffs enrolled ROXIE at Summerkids, Inc.

10  and entrusted ROXIE into SUMMERKIDS, INC.'S care, particularly in and around the swimming

11  pool, and as a result Roxie drowned.

12        19.    The DEFENDANTS', and each of them, including DOES 1-50, conduct as alleged

13  herein establishes that the DEFENDANTS' actions constituted oppression, fraud, and/or malice

14  as defined in Civil Code Section 3294. DEFENDANTS, and each of them, including DOES 1-50, took

15  on the obligation of operating a child day care summer camp, which included swimming activities

16  for young children.  In its knowingly unsafe operation of the child day care summer camp,

17  including the fraudulent ARC certification of DEFENDANTS' employees regarding water safety,

18  lifeguarding, CPR, AED, and First Aid in a blatant attempt to mislead the public that this was a

19  very safe place for parents, such as the Plaintiffs, to enroll their child, including non-swimmers

20  like ROXIE in DEFENDANTS' day camp. The DEFENDANTS exhibited a willful and conscious

21  disregard for the safety of the children and their parents, constituting gross negligence.

22  PLAINTIFFS are therefore entitled to recover, in addition to actual damages, exemplary and

23  punitive damages to make an example of and to punish DEFENDANTS, and each of them,

24  including DOES 1-50, in an amount according to proof.

25                                  **THE PARTIES**

26        20.    Plaintiff, ELENA MATYAS ("MATYAS") is and was at all times pertinent, an

27  individual domiciled in the State of California, County of Los Angeles and was within the

28  jurisdiction of the County of Los Angeles. Plaintiff MATYAS is the surviving mother of ROXIE, who

8

1    died as a result of a preventable drowning at Summerkids Camp.

2        21.    Plaintiff, DOUGLAS FORBES ("FORBES") is and was at all times pertinent, an

3    individual domiciled in the State of California, County of Los Angeles and was within the

4    jurisdiction of the County of Los Angeles. Plaintiff FORBES is the surviving father of ROXIE, who

5    died as a result of a preventable drowning at Summerkids Camp.

6        22.    PLAINTIFFS are authorized to bring this Complaint as a survival action, as the

7    successors in interest of ROXIE, pursuant to Code of Civil Procedure Section 377.30, and as a

8    wrongful death action, pursuant to Code of Civil Procedure Section 377.60.

9        23.    PLAINTIFFS are informed and believe, and on that basis allege Defendant

10    SUMMERKIDS, INC. is and was at all times pertinent, a California Corporation within the

11    jurisdiction of County of Los Angeles. Defendant SUMMERKIDS, INC.'s principal place of business

12    is located at 1640 Knollwood Dr., Pasadena, CA 91103, operating a 57-acre camp facility located

13    at 3697 N. Fair Oaks Ave, Altadena, CA 91001 also known as "Summerkids Camp." Both locations

14    are in the State of California, County of Los Angeles.

15        24.    PLAINTIFFS are informed and believe, and on that basis allege Defendant

16    ANGELUS MOUNTAIN CENTER is and was at all times pertinent, an entity type unknown operating

17    as a 57-acre camp and swimming pool facility located at 3697 N. Fair Oaks Ave, Altadena, CA

18    91001. PLAINTIFFS are informed and believe, and on that basis allege, that ANGELUS MOUNTAIN

19    CENTER was at all times relevant herein, owned and operated by Defendant JOSEPH DIMASSA.

20        25.    PLAINTIFFS are informed and believe, and on that basis allege Defendant THE

21    ENOTECA, LLC is and was at all times pertinent a California Limited Liability Company with a

22    principal place of business located at 1640 Knollwood Dr., Pasadena, CA 91103. PLAINTIFFS are

23    informed and believe that THE ENOTECA, LLC, is, and at all times relevant herein was, also known

24    as ENOTECA DIMASSA, LLC,[1] which is the entity in which THE DIMASSAS hold title to the 57 acre

25

26    [1] PLAINTIFFS are informed and believe, and on that basis allege, that ENOTECA DIMASSA, LLC's
      Articles of Organization were amended in 2002 to rename it THE ENOTECA, LLC. The real
27    property records for their properties continue to be in the name of ENOTECA DIMASSA, LLC,
      which is no longer a registered entity per the California Secretary of State website. Plaintiff will
28    use the current registered name of the entity THE ENOTECA, LLC, in this Complaint.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   camp facility located at 3697 N. Fair Oaks Ave, Altadena, CA 91001. PLAINTIFFS are informed and

2   believe, and on that basis allege, that this is the same piece of real property where THE DIMASSAS

3   operate the ANGELUS MOUNTAIN CENTER and Summerkids Camp.  PLAINTIFFS are informed and

4   believe, and on that basis allege, that THE DIMASSAS use the names THE ENOTECA, LLC and

5   ENOTECA DIMASSA, LLC interchangeably and that they are one and the same entity.

6       26.   PLAINTIFFS are informed and believe, and on that basis allege Defendant SEMPRE

7   AVANTI, LLC, is and was at all times pertinent a California Limited Liability Company with a

8   principal place of business located at 1640 Knollwood Dr., Pasadena, CA 91103.  PLAINTIFFS are

9   informed and believe SEMPRE AVANTI, LLC is the entity in which THE DIMASSAS held title to their

10  homes located at 1630 and 1640 Knollwood Drive in Pasadena, which is the same location out of

11  which THE DIMASSAS operated Summerkids Camp and THE ENOTECA, LLC.

12      27.   PLAINTIFFS are informed and believe, and on that basis allege, Defendant THE

13  DIMASSA FAMILY FOUNDATION, is a non-profit private foundation organized under Internal

14  Revenue Code Section 501(c)(3).   Per the 2018 990 tax return filed for THE DIMASSA FAMILY

15  FOUNDATION, the only contributors to the foundation are Defendants JOSEPH AND MARIA

16  DIMASSA.  The principal place of business for THE DIMASSA FAMILY FOUNDATION is now 840 E.

17  Green Street, #215, Pasadena, CA 91101.  For calendar years 2014-17, PLAINTIFFS are informed

18  and believe, and on that basis allege, that the principal place of business of the Foundation was

19  1640 Knollwood Drive, in Pasadena, the same location out of which THE DIMASSAS operated

20  SUMMERKIDS INC., THE ENOTECA LLC, and SEMPRE AVANTI, LLC. PLAINTIFFS are further

21  informed and believe, and on that basis allege, that THE DIMASSA FAMILY FOUNDATION was

22  originally funded by Allegra Center Inc., another California Corporation with a principal place of

23  business now located at 840 E. Green Street, #215, Pasadena, CA 91101; that was previously at

24  1640 Knollwood Drive, in Pasadena.

25      28.   PLAINTIFFS are informed and believe, and on that basis allege Defendants THE

26  DIMASSAS are now and were at all times mentioned herein adult residents of the State of

27  California, County of Los Angeles.  PLAINTIFFS are informed and believe that (1) MARIA DIMASSA,

28  JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA, M.D. are alter egos of

10

1  SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC,

2  THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION (2)

3  that they are co-owners of SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE

4  ENOTECA, LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE

5  DIMASSA FAMILY FOUNDATION, and (3) that they serve as officers, directors, managers and

6  principals of SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE

7  AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION.

8       29.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant DANIEL

9  H. RAINEY also known as "Hank" ("RAINEY"), is and was at all pertinent times, an individual adult

10  residing in the County of Los Angeles, State of California.  PLAINTIFFS are informed and believe,

11  and on that basis allege, RAINEY was at all times herein mentioned employed by either

12  SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES as a lifeguard and

13  camp counselor for the Summerkids Camp.  PLAINTIFFS are informed and believe, and on that

14  basis allege, RAINEY was on duty at the time of the tragic incident described herein, and he was

15  ROXIE'S "buddy counselor" assigned to watch over ROXIE at the time of her death.  PLAINTIFFS

16  are informed and believe, and on that basis allege, RAINEY is and was at all pertinent times

17  represented to be a certified lifeguard, water safety instructor and certified to perform

18  Cardiopulmonary resuscitation ("CPR") and Automated External Defibrillator ("AED").

19       30.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant

20  ANDREW LARA CERVANTES ("CERVANTES") is and was at all time pertinent, an individual adult

21  residing in the City and County of Los Angeles, State of California.  PLAINTIFFS are informed and

22  believe, and on that basis allege, that CERVANTES was at all times mentioned contracted with

23  Defendant ARC as an ARC water safety and lifesaving instructor. PLAINTIFFS are informed and

24  believe, and on that basis allege, that CERVANTES was at all times herein mentioned contracted

25  and/or employed by SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES

26  and was responsible for testing and certifying lifeguards at the Summerkids Camp to receive ARC

27  certification to be used in Summerkids Camp's advertising regarding safety. Under ARC's

28  authorization and consent, CERVANTES wrongfully certified Summerkids Camp employees,

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    including JOSEPH NATALIZIO, RAINEY, NATALIE DEL CASTILLO, JOSEPH DIMASSA and FAITH

2    PORTER whereby each said lifeguard took no written examination and received less than half the

3    water safety and lifeguard training prescribed in ARC's writings and manuals. CERVANTES also

4    wrongfully certified HANK RAINEY as an ARC water safety instructor, without RAINEY taking a

5    written examination and receiving far less hours of training as required by ARC written materials

6    and manuals. PLAINTIFFS are informed and believe, and on that basis allege, CERVANTES is and

7    was at all pertinent times represented to be an ARC certified lifeguard, water safety instructor

8    and certified to train individuals in CPR and AED and at all times was acting with the permission

9    of ARC and in the course and scope of his agency with ARC.

10          31.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant TREVOR

11    BOREHAM (hereinafter "BOREHAM") is and was at all time pertinent, an individual adult and

12    owner of Defendant Life Saving Certified (hereinafter "LSC"), business form unknown and doing

13    business in the County of Los Angeles  PLAINTIFFS are informed and believe, and on that basis

14    allege, that Defendant BOREHAM and Defendant  LSC  were at all times herein mentioned

15    contracted and/or employed by SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA

16    ENTITIES and were responsible for training, testing and certifying SUMMERKIDS, INC. employees

17    in CPR, AED, and First Aid in order to protect the children at Summerkids  Camp

18          32.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant JOSEPH

19    NATALIZIO is and was at all times pertinent, an individual adult residing in the County of Los

20    Angeles, State of California.  PLAINTIFFS are informed and believe, and on that basis allege

21    NATALIZIO was at all times herein mentioned employed by SUMMERKIDS, INC., THE DIMASSAS

22    or one of the other DIMASSA ENTITIES and was represented to be a senior counselor and certified

23    lifeguard assigned to the lifeguard chair at the Summerkids Camp when Roxie died due to a

24    preventable drowning.

25          33.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant JAIMI

26    HARRISON ("HARRISON") is and was at all pertinent times, an individual adult residing in County

27    of Los Angeles, State of California.  PLAINTIFFS are informed and believe, and on that basis allege,

28    HARRISON was at all times herein mentioned employed by SUMMERKIDS, INC., THE DIMASSAS

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   or one of the other DIMASSA ENTITIES as the Assistant Director of the Summerkids Camp.

2       34.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant FAITH

3   PORTER ("PORTER"), is and was at all pertinent times, an individual residing in County of Los

4   Angeles, State of California.  PLAINTIFFS are informed and believe, and on that basis allege,

5   PORTER was at all times herein mentioned employed by SUMMERKIDS, INC., THE DIMASSAS or

6   one of the other DIMASSA ENTITIES as a counselor and lifeguard to oversee the shallow end of

7   the pool at the Summerkids Camp.

8       35.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant NATALIE

9   DEL CASTILLO ("CASTILLO"), is and was at all pertinent times, an individual residing in County of

10  Los Angeles, State of California.  PLAINTIFFS are informed and believe, and on that basis allege,

11  CASTILLO was at all times herein mentioned employed by SUMMERKIDS, INC., THE DIMASSAS or

12  one of the other DIMASSA ENTITIES as a counselor and lifeguard to oversee the shallow end of

13  the pool at the Summerkids Camp.

14      36.     PLAINTIFFS are informed and believe, and on that basis allege, Defendant THE

15  AMERICAN NATIONAL RED CROSS also known as The American Red Cross ("ARC"), is and was at

16  all pertinent times, a non-profit, tax -exempt, charitable corporation, doing business in the

17  County of Los Angeles, State of California with its headquarters located at 1450 S. Central Ave.,

18  Los Angeles, CA 90021.

19      37.     The true names of, capacities, whether individual, corporate, associate,

20  governmental or otherwise, of DEFENDANTS, and each of them, including DOES 1-50 are

21  unknown to PLAINTIFFS at this time, who therefore sue such Defendants by such fictitious names.

22  When the true names and capacities of such Doe Defendants are ascertained, PLAINTIFFS will

23  amend this Complaint accordingly.

24      38.     PLAINTIFFS are informed and believe, and on that basis allege that each of the

25  Defendants designated herein as a Doe was negligent and guilty of the same conduct as the other

26  Defendants, and is responsible in some manner for the events and happenings herein referred

27  to, and that their negligence proximately caused the injuries and damages sustained by

28  PLAINTIFFS as herein alleged, either through such Defendants' own negligent conduct or through

13

1   the conduct of their agents, servants, partners, joint venturers, representatives, servants,

2   employees, managing agents, managing supervisors, and/or co-conspirators, or due to their

3   ownership, control, rental, use, and/or lease of the property or instrumentality by which

4   PLAINTIFFS' wrongful death injuries were caused, or in some other manner by Defendants

5   actions.

6       39.     PLAINTIFFS are informed and believe, and on that basis allege that at all times

7   herein mentioned, each of the Defendants named herein, including each Doe Defendant, was the

8   agent, servant, partner, joint venturer, representative, servant, employee, managing agent,

9   managing supervisor, and/or co-conspirator of the remaining Defendants, and was at all such

10  times acting within the purpose and scope of said such agency, service, partnership and/or

11  employment, unless otherwise stated.

12      40.     All allegations made in this Complaint are based upon information and belief,

13  except those allegations which pertain to the named PLAINTIFFS, which are based on personal

14  knowledge.  The allegations of this complaint stated on information and belief are likely to have

15  evidentiary support after a reasonable opportunity for further investigation or discovery.

16                          **JURISDICTION AND VENUE**

17      41.     Venue is proper and this court has jurisdiction in this matter pursuant to California

18  Code of Civil Procedure § 410.10 and § 395(a) because the incident, death, injury, and/or harm

19  giving rise to this action occurred the County of Los Angeles, State of California.

20      42.     At all times mentioned in this Complaint, the DIMASSA FAMILY Defendants owned

21  and operated a camp with their principal place of business at 1640 Knollwood Drive, Pasadena,

22  CA 91103, and the camp facility located at 3697 N. Fair Oaks Ave, Altadena, CA 91001.

23                          **GENERAL ALLEGATIONS**

24      43.     The Summerkids Campers, including ROXIE, were under the immediate and direct

25  supervision of an inadequate number of representatives, agents, and employees of

26  DEFENDANTS, and each of them, including DOES 1-50 who lacked the requisite experience and

27  training to supervise the pool area and to render aid to young campers in emergency situations.

28      44.     PLAINTIFFS are the parents of ROXIE and hereby bring this claim against

14

1   DEFENDANTS, and each of them, including DOES 1-50 for the wrongful death of their daughter,

2   ROXIE MIRABELLE FORBES, they have standing to bring a wrongful death action pursuant to

3   California Code of Civil Procedure, Section 377.60. PLAINTIFFS are individuals who are, and at all

4   relevant times mentioned herein, were adult residents of Los Angeles County, California.

5       45.   ROXIE was a minor (DOB 12/4/12) who was under the care of DEFENDANTS, and

6   each of them, including DOES 1-50 at Summerkids Camp, which is jointly owned by THE

7   DIMASSAS and the DIMASSA ENTITIES with their principal place of business at 1640 Knollwood

8   Drive, Pasadena, CA 91103, and the camp facility located at 3697 N. Fair Oaks Ave, Altadena, CA

9   91001. ROXIE died as a result of the incident described herein.

10      46.   PLAINTIFFS are informed and believe, and thereupon allege, that THE DIMASSAS

11  and the DIMASSA ENTITIES are liable for any breach of duty by their employees, agents, servants

12  and/or joint venturers under the legal theory of respondeat superior.

13      47.   PLAINTIFFS are further informed and believe, and thereon allege, that

14  DEFENDANTS' careless, negligent, grossly negligent, reckless and unlawful conduct in regard to

15  the events surrounding the subject incident was the direct, legal and proximate cause of the fatal

16  injuries sustained by ROXIE.

17      48.   PLAINTIFFS are further informed and believe, and thereupon allege, that at all

18  times mentioned herein, DEFENDANTS, and each of them, including DOES 1-50 and their

19  employees, agents, servants and/or joint venturers had a special relationship existing with ROXIE,

20  as a paid invitee, to take reasonable protective measures, especially with young campers, to

21  ensure her safety and otherwise protect her from reasonably foreseeable dangerous conduct

22  and to warn her as to such reasonably foreseeable dangerous conduct during camp activities,

23  especially in and around the pool area.

24      49.   PLAINTIFFS are further informed and believe, and thereon allege, that the later

25  misconduct of DEFENDANTS, and each of them, including DOES 1-50 including any employees,

26  agents, servants and/or joint venturers, after ROXIE was taken out of the pool, caused further

27  harm to her.

28      50.   PLAINTIFFS are informed and believe, and on that basis allege, SUMMERKIDS, INC.,

15

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   THE DIMASSAS and DIMASSA ENTITIES are liable for any breach of duty by their employees,

2   agents, servants and/or joint venturers under the legal theory of respondeat superior.

3   PLAINTIFFS are further informed and believe, and thereon allege, that DEFENDANTS, and each of

4   them, including DOES 1-50 were careless, negligent, grossly negligent, reckless and engaged in

5   fraudulent, unlawful conduct with respect to the events surrounding the subject incident which

6   was the direct, legal and proximate cause of the fatal injuries sustained by ROXIE.

7        51.    PLAINTIFFS are informed and believe, and on that basis allege, Defendants ARC

8   and DOES 36-50, are liable for any breach of duty by their employees, agents, servants and/or

9   joint venturers, including but not limited to defendant CERVANTES and DOES, 21 – 35, under the

10  legal theory of respondeat superior.  At all times herein, Defendant ARC required Defendant

11  CERVANTES to be an "Authorized Provider" and said Defendant ARC had entered into a "Licensed

12  Training Provider Agreement" hereinafter "LTPA" with Defendants SUMMERKIDS, INC. and THE

13  DIMASSAS and DIMASSA ENTITIES who were responsible for collecting on behalf of Defendant

14  ARC fees and other payments for training, and Defendant ARC was responsible for ensuring that

15  said Defendants' personnel received ARC water safety and lifeguarding certificates.  Plaintiffs are

16  further informed and believe, and thereon allege, that DEFENDANTS ARC, CERVANTES, and DOES

17  21-50, and each of them were careless, negligent, grossly negligent, reckless and engaged in

18  fraudulent, unlawful conduct with respect to the events surrounding the subject incident which

19  was the direct, legal and proximate cause of the fatal injuries sustained by ROXIE.

20        52.    PLAINTIFFS are informed and believe, and on that basis allege, Defendants

21  BOREHAM, LSC and DOES 20-35, are liable for any breach of duty by their employees, agents,

22  servants and/or joint venturers under the legal theory of respondeat superior.  Plaintiffs are

23  further informed and believe, and thereon allege, that DEFENDANTS BOREHAM, LSC, and DOES

24  20-35, and each of them were careless, negligent, grossly negligent, reckless and engaged in

25  fraudulent, unlawful conduct with respect to the events surrounding the subject incident which

26  was the direct, legal and proximate cause of the fatal injuries sustained by ROXIE.

27        53.    As a result of the DEFENDANTS' negligence, gross negligence, ROXIE received

28  emergency medical care, and ultimately perished due to her fatal injuries.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

54.     As a result of ROXIE's untimely death, PLAINTIFFS have suffered damages in excess of the jurisdictional minimum of this Court, including loss of love, companionship, care, and affection.

55.     Defendants' actions also constitute gross negligence, oppression, fraud, and/or malice as defined in Civil Code Section 3294, and PLAINTIFFS should recover, in addition to actual damages, exemplary and punitive damages to make an example of and to punish DEFENDANTS, in an amount according to proof.

56.     At all times herein mentioned, Defendant ARC and DOES 36-50 failed to provide the quality training needed to help defendant CERVANTES, SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES and DOES 1-35 carry out Defendant CERVANTES', SUMMERKIDS, INC.'s, THE DIMASSAS' or one of the other DIMASSA ENTITIES' responsibilities to prepare for, conduct, report on and evaluate the ARC courses for water safety and lifeguarding, including but not limited to the ARC water safety and ARC lifeguard programs provided to Defendant Summerkids Camp, NATALIZIO, RAINEY, PORTER, CASTILLO and JOSEPH DIMASSA. As a consequence of said failure, decedent Roxie Forbes drowned on June 28, 2019.

57.     At all times herein mentioned, Defendant ARC and DOES 36-50 failed to provide the appropriate materials, including but not limited to written testing materials, supplies and equipment needed by Defendant CERVANTES, SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES and DOES 1-35 to meet the requirements of the ARC water safety and lifeguarding courses, including providing written tests to prospective ARC water safety and lifeguard applicants that Defendant CERVANTES, SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES and DOES 21-35 taught to defendant Summerkids and its employees and DOES 1-20. As a consequence of said failure, decedent Roxie Forbes drowned on June 28, 2019.

58.     At all times herein mentioned, Defendant ARC and DOES 36-50 failed to provide timely course and instructor updates to Defendant CERVANTES, SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES and DOES 1-35 regarding updates on safety skills required by ARC lifeguards, including the lifeguards at Summerkids Camp, to safely perform

17

1   their duties. As a consequence of said failure, decedent Roxie Forbes drowned on June 28, 2019.

2         59.    At all times herein mentioned, Defendant ARC and DOES 36-50 failed to establish

3   and explain to Defendant CERVANTES. SUMMERKIDS, INC., THE DIMASSAS and/or one of the

4   other DIMASSA ENTITIES and DOES 1-35 all national and local policies, regulations, and

5   procedures that relate to Defendant ARC water safety and lifeguard instructors such as

6   Defendant CERVANTES', SUMMERKIDS, INC.'s, THE DIMASSAS' and/or one of the other DIMASSA

7   ENTITIES' and DOES 1-50 responsibilities, including but not limited to ARC certification

8   procedures and policies for lifeguards, water safety, and the ARC Code of Conduct. As a

9   consequence of said failure, decedent Roxie Forbes drowned on June 28, 2019.

10         60.    At all times herein mentioned, Defendant ARC and DOES 36-50 failed to provide

11   effective, timely support and guidance to its Water Safety and Lifeguard instructors, including

12   but not limited to Defendant CERVANTES, SUMMERKIDS, INC., THE DIMASSAS and/or one of the

13   other DIMASSA ENTITIES and DOES 1-35, regarding water safety and lifeguard instruction

14   provided to SUMMERKIDS, INC. and its employees. As a consequence of said failure, decedent

15   Roxie Forbes drowned on June 28, 2019.

16         61.    At all times herein mentioned, Defendant ARC and DOES 36-50 failed to evaluate

17   Defendant CERVANTES', SUMMERKIDS, INC.'s, THE DIMASSAS' and/or one of the other DIMASSA

18   ENTITIES' and DOES 1-35 teaching performance, including but not limited to Defendant

19   CERVANTES,' SUMMERKIDS, INC.'s, THE DIMASSAS' or one of the other DIMASSA ENTITIES' and

20   DOES 1-35 teaching performance of ARC Water Safety and Lifeguard skills to defendant

21   SUMMERKIDS, INC., RAINEY, JOSEPH DIMASSA, NATALIZIO, PORTER, CASTILLO and DOES 1-20. As

22   a consequence of said failure, decedent Roxie Forbes drowned on June 28, 2019.

23         62.    At all times herein mentioned, Defendant ARC and DOES 36-50 failed to confirm

24   and ensure that its Water Safety and Lifeguard instructors, including but not limited to Defendant

25   CERVANTES, SUMMERKIDS, INC., THE DIMASSAS and/or one of the other DIMASSA ENTITIES and

26   DOES 1-35 followed all the current policies, regulations and procedures of the ARC, including

27   policies and procedures regarding written testing of applicants, related to the conduct and

28   administration of ARC courses, including those Water Safety and Lifeguarding courses that were

1   provided to employees of defendant SUMMERKIDS, INC. and DOES 1-20, including but not limited

2   to Defendants RAINEY, JOSEPH DIMASSA, NATALIZIO, CASTILLO and PORTER. As a consequence

3   of said failure, decedent Roxie Forbes drowned on June 28, 2019.

4       63.   At all times herein mentioned, Defendant ARC and DOES 36-50 failed to recognize

5   that Defendant CERVANTES and DOES 21-35 had not completed appropriate instructor training

6   courses as a prerequisite of authorization as an ARC Instructor and that CERVANTES and DOES

7   21-35 was not authorized under Defendant ARC and DOES 36-50 rules and regulations which

8   Defendant ARC and DOES 36-50 failed to enforce. As a consequence of said failure, decedent

9   Roxie Forbes drowned on June 28, 2019.

10       64.   At all times herein mentioned, Defendant ARC and DOES 36-50 failed to make

11   certain and ensure that all ARC Water Safety and Lifeguarding Course classes assigned to/and/or

12   taught by Defendant CERVANTES, SUMMERKIDS, INC., THE DIMASSAS and/or one of the other

13   DIMASSA ENTITIES and DOES 1-35,  included the completion of required records in a timely and

14   accurate manner and provided appropriate, accurate and true ARC Course Certificates or other

15   recognition to participants, for which said Defendant ARC and DOES 36-50 were required to have

16   completed. As a consequence of said failure, decedent Roxie Forbes drowned on June 28, 2019.

17       65.   At all times herein ARC and DOES 36-50 received payment from Defendant

18   SUMMERKIDS, INC., THE DIMASSAS and/or one of the other DIMASSA ENTITIES and DOES 1-20

19   through CERVANTES and DOES 1-35 regarding Certification of Defendant SUMMERKIDS, INC.'s,

20   THE DIMASSAS' and/or one of the other DIMASSA ENTITIES' lifeguards. Said ARC lifeguard

21   Certification fee was ultimately paid in part from the tuition that Plaintiffs paid to SUMMERKIDS,

22   INC., THE DIMASSAS and/or one of the other DIMASSA ENTITIES on behalf of ROXIE to attend the

23   Summerkids Camp.

24       66.   At all times relevant defendants BOREHAM and LSC, had a duty to properly train

25   SUMMERKIDS, INC. employees in CPR, AED, and First Aid Safety training. Instead of receiving the

26   full training Plaintiffs are informed and believe, and thereon allege, Defendants SUMMERKIDS,

27   INC., THE DIMASSAS or one of the other DIMASSA ENTITIES requested a dangerously short

28   training session for which BOREHAM AND LSC, and DOES 21-35 wrongfully agreed to do. At all

1  times Defendant BOREHAM and LSC and DOES 21-35 knew that this dangerously short training

2  session was severely insufficient and would almost certainly lead to a death or very serious

3  permanent injury if a drowning disaster occurred. As a result of the negligence and gross

4  negligence of BOREHAM and LSC, and DOES 21-35, regarding said training, Defendants BOREHAM

5  and LSC were responsible for Defendants SUMMERKIDS, INC. employees being unfit and

6  incompetent regarding CPR, AED, and First Aid, ultimately causing ROXIE's death.

7  **ALTER EGO ALLEGATIONS**

8  PIERCING THE CORPORATE VEIL AGAINST SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER,

9  THE ENOTECA, LLC, SEMPRE AVANTI, LLC, THE DIMASSA FAMILY FOUNDATION, THE TRUSTEE OF

10  THE DIMASSA FAMILY TRUST

11      67.    PLAINTIFFS hereby re-allege and incorporate by reference each and every

12  allegation and statement contained in the prior paragraphs.

13      68.    PLAINTIFFS are informed and believe, and on that basis allege, that MARIA

14  DIMASSA, JOSEPH DIMASSA, CARA DIMASSA, and GIANCARLO DIMASSA, M.D., on the one hand

15  and SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI,

16  LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION have

17  operated as alter egos of one another.

18      69.    There exists, and at all times herein mentioned there existed, a unity of interest

19  and ownership between Defendants MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA, and

20  GIANCARLO DIMASSA, M.D., and SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE

21  ENOTECA, LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE

22  DIMASSA FAMILY FOUNDATION, such that any individuality and separateness between Defendants

23  THE DIMASSAS and such entities have ceased, and such entities are the alter egos of THE DIMASSAS.

24      70.    PLAINTIFFS are informed and believe, and on that basis allege that THE DIMASSAS

25  have engaged in substantial commingling of corporate and personal affairs.

26      71.    PLAINTIFFS are informed and believe, and on that basis allege Defendants

27  SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC,

28  THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION are

owned and controlled by THE DIMASSAS. These entities do not operate as entities, but rather as one, with the separate entities used to shield assets and other revenues in a manner to best suit their owners.

72.    PLAINTIFFS are informed and believe, and on that basis allege, there is a unity of interest and ownership between THE DIMASSAS on the one hand and the DIMASSA ENTITIES on the other.

73.    PLAINTIFFS are informed and believe, and on that basis allege THE DIMASSAS and DIMASSA ENTITIES have transferred assets and revenues among and between themselves and their alter egos to defraud creditors.

74.    PLAINTIFFS are informed and believe, and on that basis allege, THE DIMASSAS systematically engaged in a series of transactions intended to transfer assets from themselves and SUMMERKIDS INC. to other entities such as ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and the DIMASSA FAMILY FOUNDATION intending to make the ANGELUS MOUNTAIN CENTER or their real property, including, but not limited to those located at 1630 or 1640 Knollwood in Pasadena, 840 E. Green Street, #215, Pasadena, or 3697 N. Fair Oaks Avenue in Altadena, unavailable to satisfy a judgment. The real property located at 3807 El Sereno Ave., Altadena, California and 3797 El Sereno Ave., Altadena, California allegedly owned by Defendant Sempre Avanti at all times are used by Summerkids, Inc. for its camp functions/operations.

75.    PLAINTIFFS are informed and believe, and on that basis allege, THE DIMASSAS have at all times relevant herein exercised control and dominion over SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION with a disregard for the separate legal status of these entities in an attempt to defraud creditors.

76.    PLAINTIFFS are informed and believe, and on that basis allege, adherence to the fiction of the separate existence of the Defendants SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION as separate entities distinct from THE DIMASSAS would permit

1  an abuse of the privilege of organizing businesses under the laws of the State of California and

2  would sanction fraud and promote injustice.

3       77.    PLAINTIFFS are informed and believe, and on that basis allege that SUMMERKIDS, INC.,

4  ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE

5  DIMASSA FAMILY TRUST and THE DIMASSA FAMILY FOUNDATION have such a unity of interest

6  and operations that separate personalities of these entities no longer exist and if the acts are treated as

7  those of the entities alone, an inequitable result will follow. PLAINTIFFS are informed and believe,

8  and on that basis allege Defendants SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER, THE ENOTECA,

9  LLC, SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST and THE DIMASSA FAMILY

10  FOUNDATION, are owned and controlled by THE DIMASSAS.  These entities do not operate as

11  entities, but rather as one, with the separate entities used to shield assets and other revenues in a

12  manner to best suit their owners.  Moreover, SUMMERKIDS, INC., ANGELUS MOUNTAIN CENTER,

13  THE ENOTECA, LLC, and SEMPRE AVANTI, LLC, THE TRUSTEE OF THE DIMASSA FAMILY TRUST are the alter

14  egos of each other, that they share some of the same ownership, management and marketing.

15                          **FIRST CAUSE OF ACTION**

16                          **Negligence – Wrongful Death**

17                   **Against all DEFENDANTS and DOES 1-50 inclusive**

18       78.    PLAINTIFFS hereby re-allege and incorporate by reference each and every

19  allegation and statement contained in the prior paragraphs.

20       79.    PLAINTIFFS are informed and believe, and on that basis allege, DEFENDANTS and each

21  of them, including DOES 1-50, had a duty to exercise reasonable care in the ownership,

22  maintenance, operation, and management of their premises, and in the care and supervision of the

23  children in their custody, including the ROXIE, in order to avoid exposing them to an

24  unreasonable risk of harm. Said DEFENDANTS also had a duty to ensure that the Summerkids

25  Camp lifeguards and other SUMMERKIDS, INC. employees were fully and properly trained in

26  water safety and lifeguarding under the ARC guidelines set forth in ARC written materials and

27  manuals in order to keep the children including ROXIE safe while using the swimming pool on the

28  premises. Said DEFENDANTS also had a duty to ensure that all SUMMERKIDS, INC. employees

1   were fully trained in CPR, AED, and First Aid including, but not limited to, HARRISON, CARA

2   DIMASSA, JOSEPH DIMASSA, RAINEY, NATALIZIO, PORTER and CASTILLO and other SUMMERKIDS,

3   INC. employees on the premises at the time of ROXIE'S death. At all times herein mentioned said

4   DEFENDANTS were negligent in their duty to ensure that the Summerkids Camp lifeguards and

5   other SUMMERKIDS, INC. employees on duty at the time of ROXIE'S death were fully and properly

6   trained in water safety and lifeguarding under ARC guidelines. At all times herein mentioned, said

7   DEFENDANTS were further negligent in their duty to ensure that Summerkids Camp lifeguards

8   and other SUMMERKIDS INC. employees on duty at the time of ROXIE'S death were fully and

9   properly trained in CPR, AED, and First Aid. As a consequence of the negligence of said

10   DEFENDANTS and each of them and DOES 1-50, ROXIE drowned on June 28, 2019.

11       80.     PLAINTIFFS are informed and believe, and on that basis allege, DEFENDANTS and

12   each of them, including DOES 1-50, had a special relationship existing with ROXIE, as a paid

13   invitee, to take reasonable protective measures, especially given she had been rated as a "non-

14   swimmer," to ensure her safety and otherwise protect her from reasonably foreseeable

15   dangerous conduct and to warn her as to such reasonably foreseeable dangerous conduct during

16   camp activities such as swimming.

17       81.     The conduct of DEFENDANTS and each of them, including DOES 1-50, constituted

18   a lack of any care and an extreme departure from what a reasonably careful person would do in

19   the same situation to prevent harm to oneself or to others, constituting gross negligence.

20   DEFENDANTS were aware of the probable consequences of their acts, and willfully and

21   deliberately failed to avoid the likelihood of serious injury to decedent and others similarly

22   situated. PLAINTIFFS are informed and believe, and on that basis allege, DEFENDANTS and each

23   of them, including DOES 1-50, breached their duty of care when they carelessly and grossly

24   negligently supervised, protected, trained, and assisted in the supervision and control and safety

25   of campers in their care, such as ROXIE and to ensure that children and ROXIE were not subjected

26   to an unreasonable risk of harm while in their care and custody, and created a dangerous

27   condition by not adequately supervising campers while they were in the pool. At all times herein,

28   and particularly well in advance of ROXIE'S death, said DEFENDANTS knew that they had

improperly trained the Summerkids Camp lifeguards and other SUMMERKIDS, INC. employees in water safety, lifeguarding, CPR, AED, and First Aid. At all times herein, and particularly well in advance of ROXIE'S death, said DEFENDANTS knew that if the Summerkids Camp lifeguards and other SUMMERKIDS, INC, employees were improperly trained in water safety, lifeguarding, CPR, AED, and First Aid, as took place herein a non-swimmer child in their care could certainly drown and die as occurred with ROXIE. As a direct and proximate result of DEFENDANTS', and each of the, including DOES 1-50, ROXIE died from a preventable drowning for which DEFENDANTS, are legally responsible.

82.     PLAINTIFFS are informed and believe, and on that basis allege ROXIE was being supervised on camp property by Defendants RAINEY, NATALIZIO, PORTER, CASTILLO, HARRISON, CARA DIMASSA, AND JOSEPH DIMASSA and the lifeguards, agents employees and or independent contractors of Defendants SUMMERKIDS, INC., THE DIMASSAS and the DIMASSA ENTITIES and DOES 1-50, inclusive, with the consent, knowledge, and permission of said DEFENDANTS, which renders DEFENDANTS and each of them, including DOES 1-50, vicariously liable for the negligent acts and omissions of such agents, employees, and/or independent contractors.

83.     The danger of a "non-swimmer" six-year-old child drowning in an unsupervised pool setting was known to DEFENDANTS and DOES 1-50, or in the exercise of ordinary and reasonable care, should have been known to DEFENDANTS and DOES 1-50.

84.     PLAINTIFFS are informed and believe, and thereon allege, that ROXIE's death was a direct and proximate result of the negligent acts and omissions of DEFENDANTS, and each of them, including DOES 1-50 as described herein.

85.     PLAINTIFFS are informed and believe, and thereon allege, that ROXIE's death was a direct and proximate result of the grossly negligent acts and omissions of DEFENDANTS, and each of them, including DOES 1-50 as described herein.

86.     As a direct and proximate result of the aforementioned acts, omissions and conduct of the DEFENDANTS, PLAINTIFFS have sustained damages in a sum in excess of the minimum jurisdictional amount of this Court.

87.     DEFENDANTS', and each of them, including DOES 1-50, actions, omissions,

24

1   conduct, and behavior, were a substantial factor in causing PLAINTIFFS' harm.

2       88.     As a proximate result of the negligence of DEFENDANTS, and each of them,

3   including DOES 1-50, ROXIE died at the hospital on June 29, 2019.

4       89.     At all times prior to ROXIE's death, except for when she was unconscious and in

5   the hospital from June 28, 2019, to June 29, 2019, ROXIE lived with PLAINTIFFS, and was a loving

6   and dutiful daughter.

7       90.     As discussed herein, PLAINTIFFS are entitled under Section 377.60 of the California

8   Code of Civil Procedure to bring action on behalf of ROXIE. PLAINTIFFS have and will sustain

9   pecuniary and non-pecuniary losses by reasons of the death of ROXIE. DEFENDANTS, and each of

10  them, and DOES 1-50, inclusive, are liable for the wrongful death of ROXIE stemming from the

11  herein allegations.

12      91.     As a proximate and legal result of DEFENDANTS' conduct, PLAINTIFFS have been

13  injured in an amount not presently ascertained.  Such damages include loss of comfort and

14  companionship, loss of affection, society, moral support, emotional pain, distress and suffering,

15  and general damages in an amount to be determined at trial. PLAINTIFFS also seek compensation

16  for the emotional pain, torment, mental anguish and suffering that they have suffered and in

17  reasonable probability will continue to suffer in connection with the untimely death of ROXIE.

18      92.     As a direct and proximate result of the foregoing wrongful death of ROXIE caused

19  by the tortious conduct of the DEFENDANTS, and each of them, including DOES 1-50 PLAINTIFFS

20  are entitled to and demand damages against all DEFENDANTS, jointly and severally, including but

21  not limited to general, special, and punitive damages.

22                          **SECOND CAUSE OF ACTION**

23              **Negligent Hiring, Retention, Supervision, and Training**

24      **Against THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC, SUMMERKIDS, INC.,**

25                      **BOREHAM, LSC and DOES 1-50**

26      93.     PLAINTIFF repeats, reiterates and re-alleges each and every fact and/or allegation

27  set forth in the prior paragraphs of this complaint with the same force and effect as though more

28  fully set forth at length herein.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

94.   PLAINTIFFS are informed and believe that Defendants HARRISON, CARA DIMASSA, JOSEPH DIMASSA, RAINEY, NATALIZIO, PORTER and CASTILLO were at all times herein mentioned employed by either SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES as lifeguard, water instructors and camp counselors for the Summerkids Camp.

95.   PLAINTIFFS are informed and believe that Defendants CERVANTES and DOES 21-35 were at all times herein mentioned contracted and/or employed by either SUMMERKIDS, INC., THE DIMASSAS or the DIMASSA ENTITIES and/or ARC and was responsible for ARC testing and ARC certifying lifeguards at the Summerkids Camp. Plaintiffs are informed and believe that at all times Defendant CERVANTES and DOES 21-35 were acting as an agent on behalf of Defendant ARC and DOES 36-50 with the duty of properly training Defendants JOSEPH DIMASSA, RAINEY, NATALIZIO, PORTER and CASTILLO and other SUMMERKIDS, INC. employees in water safety training and becoming ARC certified lifeguards which CERVANTES and DOES 21-35 failed to do.

96.   PLAINTIFFS are informed and believe that Defendants BOREHAM and LSC, and DOES 21-35 were at all times herein mentioned contracted and/or employed by either SUMMERKIDS, INC., THE DIMASSAS and/or the DIMASSA ENTITIES, and were responsible for training, testing and certifying SUMMERKIDS, INC. employees in CPR, AED, and First Aid in order to protect the children at Summerkids Camp.

97.   PLAINTIFFS are informed and believe that Defendant HARRISON was at all times herein mentioned employed by SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES as the Assistant Director of the Summerkids Camp.

98.   PLAINTIFFS are informed and believe that the Summerkids employees including but not limited to JOSEPH DIMASSA, RAINEY, NATALIZIO, PORTER and CASTILLO and other SUMMERKIDS, INC. employees employed by SUMMERKIDS, INC., THE DIMASSAS or one of the other DIMASSA ENTITIES were unfit or incompetent to perform the work for which they were hired.

99.   At all times relevant defendants CERVANTES, ARC, and DOES 21-50, had a duty to properly train JOSEPH DIMASSA, RAINEY, NATALIZIO, PORTER and CASTILLO and other

26

1  SUMMERKIDS, INC. employees in water safety and lifeguarding which required more than 26
2  hours of training and a written test as established by the ARC guidelines and ARC manuals.
3  Instead of receiving the full training Defendants SUMMERKIDS, INC., THE DIMASSAS or one of the
4  other DIMASSA ENTITIES requested a shortened one-day training for lifeguard certification and
5  water safety of less than 8 hours which CERVANTES, ARC, and DOES 21-50 wrongfully agreed to
6  do. At all times Defendant CERVANTES, ARC, and DOES 21-50 knew that this training was
7  insufficient and could lead to a drowning disaster. As a result of the negligence and gross
8  negligence of CERVANTES, ARC, and DOES 21-50, regarding said training, Defendants CERVANTES,
9  ARC, and DOES 21-50 were responsible for Defendants JOSEPH DIMASSA, RAINEY, NATALIZIO,
10 PORTER and CASTILLO and other SUMMERKIDS, INC. employees being unfit and incompetent
11 regarding water safety and lifeguarding skills, ultimately causing ROXIE's death by drowning.

12     100.    Defendants SUMMERKIDS, INC., THE DIMASSAS and the DIMASSA ENTITIES knew
13 from the limited training that their Summerkids Camp employees received at their demand,
14 including but not limited to , JOSEPH DIMASSA, RAINEY, NATALIZIO, PORTER and CASTILLO and
15 other SUMMERKIDS, INC. employees, that said employees were unfit or incompetent to safely
16 operate, supervise or manage Summerkids Camp, staff and campers during swimming activities
17 and that such unfitness and/or incompetence created an extreme risk to campers engaging in
18 swimming activities while at Summerkids Camp, particularly non-swimmer campers such as
19 ROXIE. At all times said Defendants knew that, in order to save money in training their employees,
20 they requested CERVANTES, ARC, and DOES 21-50, to limit safety training and that CERVANTES,
21 ARC, DOES 21-50 should only provide less than 8 hours of water safety and lifeguard training.
22 Cervantes, ARC, and DOES 21-50, for their own financial gain, agreed to this limited training, all
23 in violation of ARC's own water safety and lifeguard training policies and procedures, requiring
24 more than 26 hours of such training.

25     101.    Defendants SUMMERKIDS, INC., THE DIMASSAS and the DIMASSA ENTITIES'
26 negligence in hiring the Summerkids employees including but not limited to JOSEPH DIMASSA,
27 RAINEY, NATALIZIO, PORTER and CASTILLO and other SUMMERKIDS, INC. employees and
28 contractor and/or employee CERVANTES and ARC and DOES 21-50 was a substantial factor in

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    causing ROXIE's death and PLAINTIFFS' resulting harm.

2         102.    At all times relevant defendants BOREHAM and LSC, had a duty to properly train

3    SUMMERKIDS, INC. employees in CPR, AED, and First Aid Safety training. Instead of receiving the

4    full training Plaintiffs are informed and believe, and thereon allege, Defendants SUMMERKIDS,

5    INC., THE DIMASSAS or one of the other DIMASSA ENTITIES requested a dangerously short

6    training session for which BOREHAM AND LSC, and DOES 21-35 wrongfully agreed to do. At all

7    times Defendant BOREHAM and LSC and DOES 21-35 knew that this dangerously short training

8    session was severely insufficient and would almost certainly lead to a death or very serious

9    permanent injury if a drowning disaster occurred. As a result of the negligence and gross

10   negligence of BOREHAM and LSC, and DOES 21-35, regarding said training, Defendants BOREHAM

11   and LSC were responsible for Defendants SUMMERKIDS, INC. employees being unfit and

12   incompetent regarding CPR, AED, and First Aid, ultimately causing ROXIE's death.

13        103.    Defendants SUMMERKIDS, INC., THE DIMASSAS and the DIMASSA ENTITIES at all

14   times knew that from the limited training in CPR, AED and First Aid that their SUMMERKIDS, INC.

15   employees received from Defendants BOREHAM and LSC and Does 21-35, that said employees

16   were unfit or incompetent to keep safe, supervise and/or safely manage Summerkids Camp

17   children/campers, including ROXIE, during swimming activities and that such unfitness and/or

18   incompetence created an extreme risk of serious injury or death to campers engaging in

19   swimming activities while at Summerkids Camp.  In order to save money in training their

20   employees, said Defendants knowingly requested BOREHAM and LSC and DOES 21-35, to

21   dangerously limit the time for CPR, AED and First Aid safety training to the SUMMERKIDS INC.

22   employee. At all times herein, Defendants BOREHAM and LSC and DOES 21-35 knew that if said

23   Defendants agreed to Defendants SUMMERKIDS, INC., THE DIMASSAS and the DIMASSA

24   ENTITIES' request, BOREHAM and LSC and DOES 21-35 would be providing dangerously

25   insufficient training in these life-or-death safety training areas. Despite this knowledge, for their

26   own financial gain, Defendant BOREHAM and LSC, and DOES 21-35 unlawfully agreed to this

27   limited training, all in violation of BOREHAM and LSC's and Does 21-35 own training policies and

28   procedures for teaching CPR, AED and First Aid to the public.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

104.    Defendants SUMMERKIDS, INC., THE DIMASSAS and the DIMASSA ENTITIES' negligence in hiring Defendant BOREHAM and LSC AND Does 21-50 was a substantial factor in causing ROXIE's death and PLAINTIFFS' resulting harm.

105.    At all times mentioned herein, Defendants SUMMERKIDS, INC., THE DIMASSAS, the DIMASSA ENTITIES CERVANTES, ARC and DOES 1-50, Inclusive, and their employees, counselors, lifeguards, agents, servants and/or joint venturers had a special relationship existing with ROXIE, as a paid invitee, to take reasonable protective measures, especially with a young non-swimmer, to ensure her safety and otherwise protect her from reasonably foreseeable dangerous conduct and to warn her as to such reasonably foreseeable dangerous conduct during camp activities.

106.    By virtue of said special relationship, Defendants SUMMERKIDS, INC., THE DIMASSAS, the DIMASSA ENTITIES, CERVANTES, ARC, BOREHAM, LSC and DOES 1-50, inclusive, owed a duty to take reasonable measures to protect all campers under their control and supervision, including Decedent, from foreseeable injury at the hands of their lifeguards, employees, agents, servants and/or joint venturers acting negligently or intentionally, by not engaging in the negligent hiring, retention, training and supervision of those lifeguards, employees, servants, and/or independent contractors, with direct contact and/or interaction with campers under their control and supervision, including, but not limited to, Decedent.

107.    Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein, Defendants SUMMERKIDS, INC., THE DIMASSAS, the DIMASSA ENTITIES, CERVANTES, ARC, BOREHAM, LSC and DOES 1-50, Inclusive, and each of them, were negligent in the hiring, retention, training, and supervision of their employees including but not limited to certain lifeguards, camp counselors, camp directors, employees, agents, servants, joint venturers and/or caretakers in that Defendants SUMMERKIDS, INC., THE DIMASSAS, the DIMASSA ENTITIES, CERVANTES, ARC, BOREHAM, LSC and DOES 1-50, Inclusive, and each of them, knew or should have known that employees were unfit for specific and mandatory tasks to be carried out and performed during the course and scope of their employment.  These tasks included, but were

29

1  not limited to the following: maintaining, inspecting, supervising, managing, regulating, warning,

2  patrolling, protecting, guarding, training, and controlling the subject swimming pool, which was

3  the legal and proximate cause of ROXIE suffering pre-death physical injuries, mental anguish,

4  terror, anxiety, unconsciousness, and ultimately death.

5      108.    As a direct and proximate result of the negligence, gross negligence, carelessness,

6  recklessness, and violations of the law of Defendants SUMMERKIDS, INC., THE DIMASSAS, the

7  DIMASSA ENTITIES, CERVANTES, ARC, BOREHAM, LSC and DOES 1-50, inclusive, Decedent ROXIE

8  was injured in her health, strength and activity, sustaining injury to her body, and shock and injury

9  to her person, all of which caused ROXIE great physical, mental and emotional pain and suffering

10 prior to her untimely death, fighting to breathe when Roxie was first pulled out of the pool, all to

11 PLAINTIFFS' damages in an amount which will be stated according to proof.

12     109.    As a direct and proximate result of the negligence, gross negligence, carelessness,

13 recklessness, and violations of the law of Defendants SUMMERKIDS, INC., THE DIMASSAS, the

14 DIMASSA ENTITIES, CERVANTES, ARC, BOREHAM, LSC and DOES 1-50, inclusive, PLAINTIFFS were

15 compelled to and did employ the services of physicians, surgeons, and other medical personnel,

16 and PLAINTIFFS were compelled to and did incur other incidental expenses, including, but not

17 limited to medical, funeral, and/or burial expenses related to the necessary care and treatment

18 of the Decedent, ROXIE.

19     110.    As a direct and proximate result of the negligence, gross negligence, carelessness,

20 recklessness, and violations of the law of Defendants SUMMERKIDS, INC., THE DIMASSAS, the

21 DIMASSA ENTITIES, CERVANTES, ARC, BOREHAM, LSC and DOES 1-50, inclusive, PLAINTIFFS claim

22 general damages resulting from loss of love, affection, society, service, comfort, support, right of

23 support, expectations of future support and counseling, companionship, solace, and mental

24 support, as well as other benefits and assistance of the Decedent in a sum in excess of the

25 jurisdictional limits of this Court, which will be stated according to proof at the time of trial.

26 Plaintiffs request general, special and punitive damages as a result.

27

28

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**THIRD CAUSE OF ACTION**

Survivor's Action

By PLAINTIFFS as Successors-In-Interest to Decedent

Against All DEFENDANTS and DOES 1-50 Inclusive

111.    PLAINTIFFS repeat, reiterate and re-allege each and every fact and/or allegation set forth in the prior paragraphs of this complaint with the same force and effect as though more fully set forth at length herein.

112.    PLAINTIFFS ELENA MATYAS and DOUGLAS FORBES are successors-in-interest to ROXIE MIRABELLE FORBES.  As the successor-in-interest of ROXIE, PLAINTIFFS ELENA MATYAS and DOUGLAS FORBES are the proper representatives to pursue a survival action in the present proceeding, in accordance with Code of Civil Procedure § 377.30. PLAINTIFFS have and will comply with Code of Civil Procedure § 377.32.

113.    As alleged herein, on June 28, 2019, ROXIE was enrolled in SUMMERKIDS Camp for the purpose of childcare. As further alleged herein, DEFENDANTS' conduct constituted a want of even scant care and an extreme departure from the ordinary standard of conduct.  Such outrageous lack of care represents an extreme departure from the ordinary standard of conduct in the context of this situation.  This conduct resulted in ROXIE'S death.

114.    As a proximate result of said conduct of all DEFENDANTS, and each of them, including DOES 1-50 and the resulting untimely death of ROXIE, PLAINTIFFS were compelled to incur expenses for ambulances, for services of hospitals, physicians, nurses, and other professional services for the care and treatment of ROXIE, the decedent, and for the funeral and burial of said deceased, all to PLAINTIFFS' damages in an amount to be shown according to proof.

115.    As a proximate result of the drowning, ROXIE suffered severe and life ending injuries. As a result of these severe injuries, ROXIE lost spontaneous circulation and required and received administration of advanced life support.

116.    Prior to her death, ROXIE sustained economic damages in an amount according to proof at trial.  The exact amount of such expense is unknown to PLAINTIFFS at this time.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

117.    This tragedy happened because SUMMERKIDS, THE DIMASSAS or one of the other DIMASSA ENTITIES hired inadequately trained and incompetent personnel, failed to properly train and supervise camp personnel, and otherwise failed to adequately provide a safe environment for children at the Summerkids Camp. PLAINTIFFS are informed and believe and on that basis allege, that the deficiencies were known to DEFENDANTS, and each of them, including DOES 1-50 and included, but were not limited to,

a.    With respect to SUMMERKIDS, MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA, GIANCARLO DIMASSA, THE ENOTECA, LLC and ANDREW CERVANTES

i.    MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA were at all times relevant herein, the owners and officers of SUMMERKIDS Camp, and were responsible for the hiring and firing of staff, training of staff, oversight of training by others, and general operations of Summerkids Camp. MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA were at all times relevant herein, the owners and officers of THE ENOTECA, LLC, which owns the land on which SUMMERKIDS camp is operated.

ii.    The DIMASSAS offered recreational programs for children Monday through Friday during daytime hours on their 57-acre property in Altadena, advertised as a "safe and secure location that includes beautiful meadows, a stream, lodge, cabins, pool, garden, sports fields, playgrounds, kitchen and more." Parents dropped children off in the morning and relied upon the DIMASSAs and all Summerkids' staff to keep their children safe.

iii.    The DIMASSAS offered swimming at the pool on the SUMMERKIDS property as part of their summer program. The DIMASSAs welcomed non-swimmers to participate in swimming activities at Summerkids, with the advertised goal of making children who are not proficient in swimming "water-safe."

iv.    According to the CDC and CPSC, drowning is the 2nd leading cause of death among children 1-4, the leading cause of unintentional injury death for that same age group and the 3rd for children 5-14. Approximately 8,000 children require hospital care each year due to nonfatal submersions. The CPSC recently reported childhood drowning is on the rise and, California ranks 3rd in the nation for most fatal and nonfatal submersions.

v.    Drowning is preventable, which is why it is imperative for camps like SUMMERKIDS to afford safe and healthy environments, pay attention to kids in the water and have exceptional staff training.

vi.    It is imperative for childcare providers that offer swim activities, like SUMMERKIDS, to have proper safety policies and training for their staff. Constant, active supervision is essential to prevent drownings, as stated by the American Red Cross, the American Academy of Pediatrics, the Center for Disease Control, and numerous other authorities. According to the American Camp Association, the majority of drowning incidents at summer camps are directly related to lack of supervision. Prevention is (or should be) 98 percent of lifeguards' roles.

vii.    SUMMERKIDS staff, at the direction of MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA, failed to administer sufficient swim tests to ascertain swimming skill levels of children. This wanton disregard for essential components of drowning prevention resulted in the death of a child in their care, ROXIE MIRABELLE FORBES.

viii.    CARA DIMASSA and JOSEPH DIMASSA, acting as officers and directors of SUMMERKIDS, hired ANDREW CERVANTES to train counselors who were hired by SUMMERKIDS and the DIMASSAS to be lifeguards at SUMMERKIDS camp.  PLAINTIFFS are informed and believe CARA DIMASSA and JOSEPH DIMASSA coordinated and managed the lifeguard and CPR training process for SUMMERKIDS' staff with input from MARIA DIMASSA and GIANCARLO DIMASSA.  All training conducted at SUMMERKIDS was done with the oversight of THE DIMASSAS as officers and directors of SUMMERKIDS.

ix.    Throughout their many-year relationship, MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA hired ANDREW CERVANTES to train, test and certify SUMMERKIDS' staff counselors in lifeguarding, water safety instruction, first aid, CPR and use of the automated external defibrillator ("AED"). This included the counselors who were purportedly in the pool when ROXIE drowned.  SUMMERKIDS' staff trained by ANDREW CERVANTES were employed by SUMMERKIDS and the DIMASSAS to act as "lifeguards" and "water safety instructors" to care for children as young as 3 years old who did not know how to swim.

33

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

x.     Under the direct supervision of CARA and JOSEPH DIMASSA, CERVANTES did not properly train or test SUMMERKIDS staff and failed to comply with the American Red Cross procedures.   From approximately 2011-2014, the training carried out by CERVANTES was administered at the home of JOSEPH DIMASSA and MARIA DIMASSA using their swimming pool on Knollwood Drive. At the time they did this, THE DIMASSAS and CERVANTES knew or should have known that residential pools are not approved locations for American Red Cross certification. The American Red Cross apparently approved SUMMERKIDS' pool facility (licensed by the Los Angeles County Health Department under the name of Angelus Mountain Center) as a training and testing site in 2015; CERVANTES then administered all training and testing at SUMMERKIDS' facility from 2015-2019.

xi.     PLAINTIFFS are informed and believe THE DIMASSAS never checked or verified the credentials of CERVANTES before they hired him to train counselors in the essential safety practices of First Aid, CPR and AED use, as well lifeguarding and water safety instruction. The DIMASSA defendants never confirmed if ANDREW CERVANTES held valid certifications from the American Red Cross to train and certify individuals in First Aid, CPR, AED use, lifeguarding or water safety instruction. The DIMASSA defendants never performed a background check on ANDREW CERVANTES or confirmed if ANDREW CERVANTES knew how to swim. Yet, the DIMASSA defendants and SUMMERKIDS retained ANDREW CERVANTES year after year to purportedly train their staff, who would be responsible for caring for up to 900 children three to fifteen years of age in high risk activities.

xii.     PLAINTIFFS are informed and believe and on that basis allege that at the time CERVANTES was hired by CARA DIMASSA and JOSEPH DIMASSA, CERVANTES himself did not meet all prerequisites for certification through the American Red Cross, and as a result, CERVANTES' certifications have now been revoked.

xiii.     CARA DIMASSA and JOSEPH DIMASSA directed CERVANTES to conduct training for CPR, First Aid, AED use, lifeguarding and water safety instruction for Summerkids' employees after such employees had already been hired by the DIMASSA defendants.   THE DIMASSA Defendants and Summerkids directed ANDREW CERVANTES to conduct and complete essential

34

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   lifesaving training skill on one weekend afternoon immediately prior to welcoming hundreds of

2   children to Summerkids.

3       xiv.   American Red Cross lifeguard and water safety instructor certifications each

4   require multiple days, if not weeks, of in-pool and classroom-based training. Successful testing in

5   pool is a grueling multi-faceted exercise. In-class testing requires an 80 percent or better score.

6   ANDREW CERVANTES admitted that, under the direct supervision of CARA and JOSEPH DIMASSA,

7   he invested a mere fraction of requisite time, administered deeply flawed training and never

8   provided testing, nor did CARA and JOSEPH DIMASSA demand that he do so.

9       xv.   The DIMASSA Defendants and SUMMERKIDS paid ANDREW CERVANTES for

10   certifications in CPR, AED, First Aid, Lifeguarding and Water Safety Instruction issued to

11   Summerkids' employees. However, if a Summerkids' employee obtained certification in CPR,

12   AED, First Aid, Lifeguarding and Water Safety Instruction independently from a source other than

13   ANDREW CERVANTES, the DIMASSA Defendants and SUMMERKIDS would NOT reimburse the

14   employee for such certification.

15       xvi.   CERVANTES issued lifeguard and water safety instruction certificates to

16   SUMMERKIDS staff members without requiring that they complete the mandatory Red Cross

17   course material(s), and without testing their water skill(s) or swimming abilities.  During the time

18   that CERVANTES certified counselors as lifeguards and water safety instructors at SUMMERKIDS

19   under the direction of the DIMASSA defendants, he never failed a single counselor who attended

20   his single day training.

21       xvii.   PLAINTIFFS are informed and believe and, on that basis, allege that the

22   "lifeguard training" provided by SUMMERKIDS, CARA DIMASSA, JOSEPH DIMASSA, and

23   CERVANTES was deficient for the reasons discussed below.

24       1.   CARA DIMASSA and JOSEPH DIMASSA hired counselors who were to become

25   lifeguards and water safety instructors at SUMMERKIDS Camp without making an inquiry into or

26   evaluating their swim skills.  Though a prerequisite, CERVANTES did not administer a swimming

27   skills test to SUMMERKIDS counselors, including RAINEY, PORTER and NATALIZIO. The DIMASSA

28   Defendants and SUMMERKIDS employed individuals to serve as lifeguards and water safety

    instructors for young children without ascertaining if their employees knew how to swim.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

2.   At the direction of CARA DIMASSA and JOSEPH DIMASSA, counselors who were hired to become lifeguards at SUMMERKIDS Camp did not complete the number of hours required for the full lifeguarding course (in person 25 hours, 20 minutes or blended 19.5 hours in person, 7.5 hours online), but instead, only attended one day of training with CERVANTES.

3.   The DIMASSA Defendants and SUMMERKIDS never inquired with ANDREW CERVANTES as to the counselors' swimming abilities or competency to act as lifeguards or water safety instructors.

4.   Counselors who were employed by CARA DIMASSA and JOSEPH DIMASSA to staff the pool as lifeguards at SUMMERKIDS Camp were never administered the CPR or first aid skills tests, or the written lifeguard test. This included the "lifeguards" reportedly at the pool at the time of ROXIE's drowning: PORTER, RAINEY and NATALIZIO.

5.   At the direction of CARA and JOSEPH DIMASSA, counselors who were hired to become water safety instructors to 3, 4 and 5 year old children at Summerkids did not complete the number of hours required for the full water safety instruction course (approximately 25 hours), but instead, only attended a very short training session with ANDREW CERVANTES commencing in the late afternoon, approximately 4:00 pm.

6.   Counselors who were hired to become lifeguards and water safety instructors at SUMMERKIDS Camp were certified despite not meeting the prerequisites for becoming lifeguards and placed in positions where those counselor/lifeguards were responsible for hundreds of young children from catastrophic injury.

xviii.    PLAINTIFFS are informed and believe CARA DIMASSA, MARIA DIMASSA and JOSEPH DIMASSA, as officers and directors of SUMMERKIDS, scheduled the SUMMERKIDS counselor lifeguards to work in the pool area each period of camp. In doing so, CARA DIMASSA, MARIA DIMASSA, GIANCARLO DIMASSA and JOSEPH DIMASSA willfully failed to put the lifeguards in teams that trained together, as recommended by the American Red Cross. CARA DIMASSA, MARIA DIMASSA and JOSEPH DIMASSA also failed to implement any sort of lifeguard rotation system for the lifeguards on duty at the SUMMERKIDS pool, despite guidelines from the American Red Cross instructing that to stay alert lifeguards should have periodic rotations and breaks from surveillance.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

xix.     PLAINTIFFS are informed and believe MARIA DIMASSA, JOSEPH DIMASSA, CARA DIMASSA and GIANCARLO DIMASSA, as officers and directors of SUMMERKIDS, willfully failed to enforce the guidelines of the American Red Cross with the counselors they purported to have "trained" to be lifeguards at their facility. This lack of enforcement is evidenced first and foremost by the fact that the lifeguards failed to pay attention to kids in the water, and further by the fact that NATALIZIO got down from the lifeguard station and turned his back on the pool in the minutes before ROXIE's drowning without having someone else take his place in the lifeguard station to supervise the children in the pool. It is also evidenced by the fact that counselor Natalie del Castillo was tossing dive sticks into the deep end for children to retrieve rather than performing surveillance duties in the minutes before ROXIE was floating. When ROXIE was spotted, lifeless in the SUMMERKIDS' POOL, she was only about five (5) feet away from where Natalie del Castillo had been standing.

xx.     CARA DIMASSA, JOSEPH DIMASSA and their staff falsely represented to parents interested in SUMMERKIDS Camp that SUMMERKIDS employed lifeguards who were certified by the American Red Cross while knowing that those "lifeguards" did not meet the certification requirements of the American Red Cross. Plaintiffs relied upon the representation made by the DIMASSA Defendants and SUMMERKIDS, and expected that Roxie would be cared for by properly certified lifeguards and supervised in accordance with well acceptable American Red Cross guidelines.

xxi.     According to the American Red Cross instruction manual provided to SUMMERKIDS staff members, lifeguards should always carry a rescue tube, hip-packs containing disposable gloves and resuscitation masks, and a whistle. PLAINTIFFS are informed and believe that the lifeguards at SUMMERKIDS did not carry a hip-pack with such items at any time in 2019. SUMMERKIDS staff who attempted to perform CPR on Roxie after her drowning did not wear gloves or use a resuscitation mask.

xxii.     The American Red Cross advises that young children and weak swimmers should wear U.S. Coast Guard approved life jackets anytime they are near water. SUMMERKIDS and the DIMASSA Defendants did not provide non-swimmers, including ROXIE with U.S. Coast Guard-approved life jackets. As a non-swimmer, Roxie was designated by SUMMERKIDS staff to the

1    "steps area" and was to be monitored by counselors/lifeguards to ensure she did not go beyond

2    the area immediate surrounding the steps in the pool.

3         xxiii.     At all times relevant herein, THE DIMASSAS and the DIMASSA ENTITIES

4    represented on their website that GIANCARLO DIMASSA M.D., an emergency medicine physician,

5    was a staff member of Summerkids Camp, who oversaw health and safety at the camp. At all

6    relevant times herein, SUMMERKID's website stated that GIANCARLO DIMASSA rearranges his

7    ER shifts so that he can be at camp and campfire on a regular basis. PLAINTIFFS are informed and

8    believe that GIANCARLO DIMASSA did not participate in camp activities in 2019, and did not

9    regularly attend meetings with staff or counselors. Plaintiffs are further informed and believe

10    and, on that basis, allege, that GIANCARLO DIMASSA did not participate in the CPR training

11    provided to the lifeguards or in their general training program in the summers of 2018 or 2019.

12         xxiv.     On the day of ROXIE's drowning, CARA DIMASSA was situated in the

13    SUMMERKIDS camp office with HARRISON when they received a call over the radio that there

14    was an emergency situation at the pool. DEFENDANTS provided investigators with an estimate

15    of 0935 as the time that ROXIE was spotted floating face down in the pool. When CARA DIMASSA

16    and HARRISON received the call that NATALIZIO was dialing 911 and starting CPR, HARRISON ran

17    to the pool area while CARA DIMASSA stayed in the office, called her parents JOSEPH DIMASSA

18    and MARIA DIMASSA and printed paperwork. HARRISON had someone on the scene inform

19    CARA DIMASSA via radio that ROXIE was receiving CPR, so that CARA DIMASSA could call ROXIE's

20    parents, as was general camp practice. However, CARA DIMASSA refused to call ROXIE's parents

21    or make any efforts to notify PLAINTIFFS of the emergency until JAIMI HARRISON did so at 0952,

   at least 13 minutes after ROXIE had been found lifeless in the SUMMERKIDS pool.

22         xxv.     Basic water safety and lifeguard training emphasizes continuous and active

23    supervision of children in the pool. SUMMERKIDS' staff including Defendants HANK RAINEY,

24    FAITH PORTER and JOSEPH NATALZIO willfully failed at the most basic of water safety skills. They

25    were not paying attention to the children in the pool. None of the SUMMERKIDS employees at

26    the pool noticed that Roxie was in peril. Rather, a SUMMERKIDS employee outside of the pool

27    area, Robert Antonucci, spotted Roxie floating lifeless in the pool, who then alerted the

28    Summerkids employees at the pool area. Roxie was floating in 4 feet of water, 12-15 feet away

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   from the "steps area." None of the SUMMERKIDS' staff noticed Roxie had floated away from the

2   steps area.

3        xxvi.    After ROXIE was finally noticed floating "dead-man" in the pool, she was

4   removed from the pool by HANK RAINEY, who lifted ROXIE vertically from under her armpits

5   without securing her head or neck, which may have resulted in further harm to ROXIE. When

6   HANK RAINEY removed ROXIE from the pool, it became apparent that she was unresponsive,

7   pulseless.

8        xxvii.    The staff at SUMMERKIDS including RAINEY and HARRISON failed to properly

9   clear ROXIE's airway from copious amounts of vomit. Natalie del Castillo held Roxie's head in a

10  manner that may have caused Roxie further harm. SUMMERKIDS staff improperly administered

11  CPR and the AED, which may have exacerbated Roxie's perilous condition

12       xxviii.    PLAINTIFFS are informed and believe that the CPR administered on ROXIE on the

13  date of ROXIE'S preventable drowning was performed inadequately, and had GIANCARLO

14  DIMASSA been on site (as PLAINTIFFS were led to believe he would be) ROXIE may have been

    properly cared for and might be alive today.

15       xxix.    After ROXIE's preventable drowning, the ambulance arrived and transported her

16  to the hospital. No SUMMERKIDS staff members rode with ROXIE in the ambulance to the

17  hospital.

18       xxx.    PLAINTIFFS are informed and believe CARA DIMASSA, JOSEPH DIMASSA and

19  MARIA DIMASSA rode to the hospital together.  On their arrival at Huntington Hospital, CARA

20  DIMASSA entered the trauma room just after ROXIE's heartbeat had been re-established, without

21  the permission of PLAINTIFFS, and had to be escorted out by staff of Huntington Hospital. CARA

22  DIMASSA and JAIMI HARRISON admitted in the past they have rode with children who were

23  injured at Summerkids and required medical attention at the hospital. A few weeks after Roxie

24  was killed at Summerkids, CARA DIMASSA accompanied a child during ambulance transport to

25  the hospital who suffered a compound fracture at Summerkids.

26       xxxi.    CARA DIMASSA made no effort to enact the SUMMERKIDS emergency action

27  plan at any time between learning of ROXIE's drowning over the radio and leaving for the

28  hospital. CARA DIMASSA described the scene at the pool after ROXIE drowned as "shocking." LA

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

County Firefighter Paramedic Weston and LA County Sheriff's Deputy Cano both reported that when they arrived at SUMMERKIDS they observed a chaotic scene, and children who had been in the pool with ROXIE were still in the pool area as CPR was being performed on ROXIE. Deputy Cano believed the chaotic scene at SUMMERKIDS created a dangerous environment for children, and therefore filed a SCAR Report (Suspected Child Abuse Reporting System) with Department of Children and Family Services ("DCFS") for suspected severe neglect.

xxxii.    GIANCARLO DIMASSA  was not present at Summerkids on the day of Roxie's drowning. Although he was the primary medical representative at Summerkids and served as a liaison to JAIMI HARRISON, he chose to take a vacation to Hawaii during the first 2 weeks of Summerkids' summer session.

xxxiii.    When Firefighter Paramedic Weston arrived at the scene, he was told that there had been two (2) lifeguards in the pool area when ROXIE drowned, and Deputy Cano was told that there had been three (3) lifeguards present on the date of ROXIE'S preventable drowning. Deputy Duarte blocked the intersections for ROXIE's transport to Huntington Memorial and later interviewed the counselors who were reportedly on-duty and present when ROXIE drowned. Deputy Duarte did not interview PORTER. The whereabouts of PORTER were unknown.

xxxiv.    After ROXIE's death on June 29, 2019, CARA DIMASSA and JOSEPH DIMASSA met with each of the SUMMERKIDS counselors and staff members purportedly involved in ROXIE's drowning in JOSEPH DIMASSA'S office; reports of PORTER being on duty as a lifeguard suddenly started to surface only after this meeting.

xxxv.    On July 2, 2019 Detectives Lawler and Blagg visited SUMMERKIDS to interview staff who had been involved in ROXIE's drowning; once again PORTER was not interviewed or made available for interview.

xxxvi.    Each of these acts and all of the conduct, actions and inactions taken as set forth in paragraphs 93(a)(i)-93(a)(xxxv) was done at the direction of, with the approval of, or ratified by THE DIMASSAS, as owners, officers and directors of SUMMERKIDS, and owners and officers of THE ENOTECA, LLC.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

xxxvii.    PLAINTIFFS are informed and believe and on that basis allege that THE DIMASSAS are collectively also the owners, officers and directors of all other entity defendants in this action, as well as the alter egos of those other entity defendants as plead at Paragraphs 50-60 of this First Amended Complaint, and that the actions taken by THE DIMASSAS were conducted and performed in their roles as officers and directors of those entity defendants and ratified by those entity defendants, including but not limited to ANGELUS MOUNTAIN CENTER, THE ENOTECA, LLC, SEMPRE AVANTI, LLC, THE DIMASSA FAMILY FOUNDATION, a 501(c)(3) corporation, and all DOE entity defendants.

b.    With respect to JAIMI HARRISON

i.    HARRISON was, at all times relevant herein, the Assistant Director of SUMMERKIDS.

ii.    Plaintiff ELENA MATYAS expressed concerns to HARRISON regarding ROXIE's "non-swimmer" status prior to ROXIE'S drowning. HARRISON assured ELENA MATYAS that she would personally speak with all counselors to ensure they were aware of ROXIE's status as a "non-swimmer." PLAINTIFFS are informed and believe that HARRISON may not have alerted all SUMMERKIDS counselors of ROXIE's "non-swimmer" status.

iii.    As the Assistant Director, HARRISON played a role in the interviewing and hiring process at SUMMERKIDS. She was responsible for the screening process and initial questioning of the interviewees. She participated in the interview process for RAINEY.

iv.    As the Assistant Director, HARRISON managed the junior counselor program, part of the counselor training for SUMMERKIDS, and all medical responsibilities related to children at SUMMERKIDS camp. Children turned to HARRISON if they were injured, and she was responsible for communicating with GIANCARLO DIMASSA regarding any medical issues that arose at camp. PLAINTIFFS are informed and believe HARRISON was hired for this management role by THE DIMASSAS despite the fact that HARRISON had no formal medical training.

v.    As the Assistant Director, HARRISON's responsibilities also included monitoring the SUMMERKIDS' pool log, updating children' swim capabilities, and ensuring lifeguards had adequate first aid supplies by the pool. On the date of the incident, the lifeguards did not even have basic CPR supplies such as a CPR shield to use in administering CPR to ROXIE. HARRISON

1  failed to provide adequate first aid supplies (e.g. CPR suction device, AED) or make them readily,

2  easily, and quickly accessible by the pool, a foreseeable location necessitating CPR at

3  SUMMERKIDS.

4       vi.      HARRISON'S actions and conduct were authorized and directed by THE

5  DIMASSAS.

6       vii.     HARRISON was present at the camp on the date of ROXIE'S preventable

7  drowning. Several minutes after ROXIE was pulled out of the water by HANK RAINEY, HARRISON

8  arrived and took over the CPR effort. PLAINTIFFS are informed and believe HARRISON was

9  unfamiliar with the process of providing rescue breaths; though time was of the essence,

10 HARRISON stopped to question the counselor lifeguards on their approach before taking over

11 and performing CPR on ROXIE. HARRISON inadequately performed CPR on ROXIE. JAIMI

12 HARRISON then placed adult (rather than pediatric) AED pads on ROXIE and failed to remove

13 ROXIE's wet bathing suit before applying the adult AED pads. PLAINTIFFS are informed and

   believe HARRISON was responsible for overseeing and implementing CPR on ROXIE.

14      viii.    According to the American Red Cross and American Heart Saver CPR manuals

15 apparently studied by SUMMERKIDS staff members, including HARRISON, it is critical to ensure

16 that there are no puddles of water around the rescuer, victim, or equipment and further critical

17 to remove the victim's wet clothing. When the AED indicated a shock was not advisable, JAIMI

18 HARRISON believed this to be a positive sign, not understanding that Roxie had no heartbeat.

19 JAIMI HARRISON, who was employed by SUMMERKIDS and the DIMASSA Defendants to manage

20 medical emergencies for hundreds of children, was improperly trained in CPR and AED.

21 HARRISON's erroneous implementation of CPR and AED on ROXIE had fatal consequences.

22      ix.      HARRISON participated in a three (3) to four (4) hour AHA Heartsaver Pediatric

23 First Aid CPR AED course provided by SUMMERKIDS and taught at SUMMERKIDS. HARRISON, as

24 someone who underwent first aid training several times over many years, knew or should have

25 known that the AHA Heartsaver course takes seven (7) to nine (9) hours to complete. HARRISON

26 had not completed the AHA Heartsaver Pediatric First Aid CPR AED course prior to administering

27 the AED or CPR for ROXIE.

28

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

c.      With respect to DANIEL H. RAINEY

i.      RAINEY received his lifeguarding certificate from CERVANTES. Plaintiffs are informed and believe that SUMMERKIDS and CERVANTES provided RAINEY with the American Red Cross manual. RAINEY understood that according to the American Red Cross manual, he needed close to 30-hours of training to become an American Red Cross certified lifeguard, yet he only participated in one day of training which was completed after about eight hours.

ii.      HANK RAINEY was also employed by SUMMERKIDS and trained by ANDREW CERVATES as a water safety instructor. According to the American Red Cross manual which RAINEY apparently studied, he needed approximately 25 hours of training to become an American Red Cross certified water safety instructor. However, RAINEY only participated in a few hours of training led by ANDREW CERVANTES on June 10, 2019. Furthermore, HANK RAINEY'S water safety instructor certification indicates that HANK RAINEY completed his certification on May 20, 2019 at the Rosemead Aquatics Center. HANK RAINEY admitted that he never attended any training at the Rosemead Aquatic Center.

iii.      RAINEY'S job as a lifeguard was to prevent drownings, help children stay safe in the water and make sure they stayed in their respective zones (steps, shallow end or whole pool). Because ROXIE was in RAINEY's "buddy group" at SUMMERKIDS, RAINEY knew that ROXIE was tested at SUMMERKIDS for her swimming abilities and marked as a "steps swimmer;" this meant that ROXIE had to stay around the steps of the pool behind the pool's three-foot mark. RAINEY also understood that ROXIE was not water safe, and not capable of swimming in the shallow end.

iv.      SUMMERKIDS maintained a "star rating system" wherein each camper was rated on a scale of one to three stars; children with three stars required a substantial amount of attention and assistance. Because ROXIE was in RAINEY's "buddy group" at SUMMERKIDS, RAINEY knew that ROXIE had three stars by her name and understood that meant ROXIE required extra consideration.

v.      On the date of ROXIE's preventable drowning, RAINEY was present as an on-duty lifeguard assigned to oversee the shallow end of the pool from inside of the water. His duties included supervising the children, frequently scanning the pool, eliminating hazardous situations,

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  recognizing and responding to emergency situations, and essentially making sure children in the

2  pool were safe.

3         vi.     On the date of ROXIE's preventable drowning, RAINEY was responsible for

4  paying attention to and watching children in the pool, including ROXIE. On the date of ROXIE's

5  preventable drowning, prior to her drowning, RAINEY saw ROXIE jumping into the pool in

6  between the two sets of steps, picked her up and moved her to the steps to his left, turned his

7  back on ROXIE and diverted his attention to another child without ensuring that other lifeguards

8  were paying attention to ROXIE who he knew was not water safe and had three stars by her

9  name, requiring extra attention. RAINEY did this with a blatant disregard for the health and safety

10  of ROXIE.

11         vii.    According to the American Red Cross instructing manual provided to

12  SUMMERKIDS staff members, including RAINEY, lifeguards should always carry a rescue tube,

13  hip-packs containing disposable gloves and resuscitation masks, and a whistle. RAINEY was not

14  carrying such items on the date of the drowning, nor did he have such items handy to use when

15  he commenced CPR on ROXIE.

16         viii.   PLAINTIFFS are informed and believe that on the date of ROXIE'S preventable

17  drowning, when he pulled ROXIE from the pool, RAINEY began administering chest compressions,

18  without first administering rescue breaths. After RAINEY performed rescue breathing on Roxie,

19  her stomach became distended. As a result of his improper training and willful disregard of

20  appropriate American Red Cross training safety protocol, HANK RAINEY inadequately performed

21  CPR on ROXIE. His erroneous rescue efforts may have caused ROXIE additional harm.

22         ix.    RAINEY inadequately performed CPR on ROXIE.

23       d.    With respect to JOSEPH NATALIZIO

24         i.    NATALIZIO was a manager at SUMMERKIDS and served as both the head

25  lifeguard and lead counselor at SUMMERKIDS in 2019. He led part of the SUMMERKIDS counselor

26  training in 2019, worked with CARA DIMASSA on the schedule for counselors, conducted reviews

27  of counselors and oversaw the swim test program for children participating in open

28  swim. NATALIZIO was the most senior staff member and lifeguard in the pool area at the time of

  ROXIE'S preventable drowning.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

ii.     NATALIZIO was also employed by SUMMERKIDS and trained by ANDREW CERVATES as a water safety instructor. According to the American Red Cross manual which NATALZIO apparently studied, he needed approximately 25 hours of training to become an American Red Cross certified water safety instructor. However, NATALZIO only participated in a few hours of training led by ANDREW CERVANTES on June 10, 2019. Furthermore, NATALZIO'S water safety instructor certification indicates that he completed his certification on May 20, 2019 at the Rosemead Aquatics Center, rather than the SUMMERKIDS pool where ANDREW CERVANTES conducted the training course.

iii.     According to the American Red Cross instruction manual provided to SUMMERKIDS staff members, including NATALIZIO lifeguards should always carry a rescue tube, hip-packs containing disposable gloves and resuscitation masks, and a whistle. PLAINTIFFS are informed and believe that the lifeguards at SUMMERKIDS, including NATALIZIO, did not carry a hip-pack with such items at any time in 2019.

iv.     On the date of ROXIE'S drowning, NATALIZIO was on-duty as a lifeguard stationed at the tower in the lifeguard chair. NATALIZIO willfully got down from the chair and turned his back on the children in the pool. NATALIZIO's recklessness and disregard for his duties as a lifeguard and his failure to pay attention to the kids in the pool led to ROXIE's death.

v.     PLAINTIFFS are informed and believe that NATALIZIO got down from the lifeguard chair and turned his back on the pool, purportedly to help a child with a bee-sting. The American Red Cross directs that lifeguards should always remain posted in the lifeguard chair, unless the lifeguard is conducting a rescue. PLAINTIFFS are informed and believe that NATALIZIO acted recklessly and with a blatant disregard for ROXIE's life and the lives of other children by getting down from the lifeguard chair and diverting his attention away from the children in the pool, to assist a child when another counselor was capable of handling the bee-sting. PLAINTIFFS are informed and believe that another counselor, Dillon Benacerraf-Gadja, was also assisting the child with a bee-sting.

e.     With respect to FAITH PORTER

i.     PORTER received her lifeguarding certificate from CERVATES. PLAINTIFFS are informed and believe that SUMMERKIDS and CERVANTES provided PORTER with the American

1  Red Cross manual, and therefore she should have known that she needed close to 30-hours of
2  training to become an American Red Cross certified lifeguard; she also should have been aware
3  of the required prerequisites. However, she only participated in a total of about eight hours of
4  training prior to receiving her certificate and did not complete each required prerequisite (i.e.
5  written exam).  FAITH PORTER willfully represented herself as a certified American Red Cross
6  lifeguard without ever completing requisite training or testing.

7       ii.     According to the American Red Cross instruction manual provided to
8  SUMMERKIDS staff members, including PORTER lifeguards should always carry a rescue tube,
9  hip-packs containing disposable gloves and resuscitation masks, and a whistle. PLAINTIFFS are
10  informed and believe that the lifeguards at SUMMERKIDS, including PORTER, did not carry a hip-
11  pack with such items at any time in 2019.

12       iii.     On the date of ROXIE'S preventable drowning, PORTER was present as a
13  counselor and on-duty lifeguard assigned to pay attention to kids in the pool, in particular to
14  oversee the shallow end of the pool. PORTER's job at the time of ROXIE's drowning was to
15  conduct surveillance over the shallow end, educate and inform children about rules, enforce
16  safety rules and make assists where necessary.

17       iv.     PLAINTIFFS are informed and believe that PORTER was aware that ROXIE was
18  classified as a "step swimmer." PLAINTIFFS are informed and believe that PORTER was standing
19  nearby ROXIE immediately prior to her drowning and failed to notice and timely assist ROXIE.
20  Despite the fact that the SUMMERKIDS pool is quite small (25'x50'), PORTER failed to notice
21  ROXIE was in peril and had floated away from the steps area.  FAITH PORTER also failed to spot
22  ROXIE floating lifeless in the pool at the time of her drowning. PORTER wantonly failed to exercise
23  the most basic water safety practice of constant supervision of children in the pool. FAITH
24  PORTER'S willful disregard for American Red Cross lifeguarding practices resulted in ROXIE's
25  death.

26       118.    Because the SUMMERKIDS Camp counselor "lifeguards" and/or other personnel
27  failed to engage in any rescue efforts for an extended period of time, there was significant delay
in providing ROXIE with CPR.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

119.   Despite knowing that the lifeguards, counselors and employees manning the pool were not fit to do so, DEFENDANTS, and each of them, including DOES 1-50 willfully, intentionally, recklessly and wantonly allowed children to enter the pool and operated SUMMERKIDS Camp knowing that their actions could unreasonably expose all of the attending children to injury, damage and potential death.

120.   DEFENDANTS were aware of the probable consequences of their acts, and willfully and deliberately failed to avoid the likelihood of serious injury to ROXIE and others similarly situated.

121.   DEFENDANTS operated the SUMMERKIDS Camp and the pool at ANGELUS MOUNTAIN CENTER in a reckless and erratic manner, up through the day and time of ROXIE'S drowning.

122.   As a result of the drowning, ROXIE suffered severe and life-ending injuries, as set forth above.

123.   DEFENDANTS' conduct would be despised by any reasonable person. DEFENDANTS, and each of them, including DOES 1-50 held themselves out as owning and operating a camp for children, and encouraged children to get in the pool regardless of their swimming ability. The consequences of putting children who do not know how to swim in the water are known to all adults. There is no excuse for conduct that endangers the lives of innocent children.   DEFENDANTS' conduct should be the subject of shame, scorn and rebuke. DEFENDANTS' conduct was clearly despicable and done in conscious disregard for the safety of others.

124.   As alleged herein, DEFENDANTS' actions constitute willful misconduct, consciously undertaken with a willful and conscious disregard of the probable consequences. These acts and failures to act by DEFENDANTS were so unreasonable and dangerous that defendants knew or should have known that injury was highly probable.

125.   DEFENDANTS' actions also constitute oppression, fraud, and/or malice as defined in Civil Code Section 3294, and PLAINTIFFS should recover, in addition to actual damages, exemplary and punitive damages to make an example of and to punish defendants, in an amount

47

1   according to proof.

2                                    **FOURTH CAUSE OF ACTION**

3                                            **Fraud**

4                    **By PLAINTIFFS as Successors-In-Interest to Decedent**

5       **Against THE DIMASSAS, THE DIMASSA ENTITIES, CERVANTES, ARC, SUMMERKIDS, INC.,**

6                               **BOREHAM, LSC and DOES 1-50**

7          126.    PLAINTIFFS repeat, reiterate and re-allege each and every fact and/or allegation

8   set forth in the prior paragraphs of this complaint with the same force and effect as though more

9   fully set forth at length herein.

10         127.    That Defendants THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC,

11  SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50, represented to Plaintiffs that the

12  SUMMERKIDS, INC. employees and/or contractors were ARC certified lifeguards and had ARC

13  water safety training as established by the ARC guidelines and written manuals and had certified

14  CPR, AED, and First Aid training in order to convince the Plaintiffs that they should enroll their six

15  year old child, ROXIE, in Summerkids Camp and that it would be safe to do so despite the fact

16  that at all times said defendants were aware that ROXIE was not water safe.

17         128.    Defendants THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC,

18  SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50's representation that the SUMMERKIDS, INC.

19  employees and/or contractors were ARC certified lifeguards and had ARC water safety training

20  as established by the ARC guidelines and written manuals and had certified CPR, AED, and First

21  Aid training, was false.

22         129.    Defendants THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC,

23  SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50 knew that the representation was false when

24  they made it, or they made the representation recklessly and without regard for its truth by way

25  of advertising, promising, and assuring parents including PLAINTIFFS that the employees were

26  ARC certified, and had certified CPR, AED, First Aid training while at all times knowing that the

27  ARC water safety and lifeguard certifications and CPR, AED, and First Aid certifications were

28  obtained illegally, deceitfully, and falsely.  The truth was that none of the employees of THE

                                                48

1    DIMASSAS, The DIMASSA ENTITIES, SUMMERKIDS, INC., and DOES 1-20 received the water safety
2    and lifeguard training from CERVANTES and ARC that ARC required in its writings and manuals of
3    more than 26 hours of training and a written test which the applicant must pass. At all times
4    defendant ARC and DOES 36-50 knew through its agent Defendant CERVANTES and DOES 21-35,
5    that THE DIMASSAS, The DIMASSA ENTITIES, SUMMERKIDS, INC. employees did not receive the
6    appropriate water safety and lifeguard training actually required for ARC certification.

7         130.    The truth was also that none of the employees of THE DIMASSAS, The DIMASSA
8    ENTITIES, SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-20 received certified CPR, AED, and
9    First Aid training from CERVANTES, ARC, BOREHAM, LSC, and DOES 21-50.

10        131.    Defendants THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC,
11   SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50 intended that Plaintiffs rely on the
12   representation that the SUMMERKIDS, INC. employees and/or contractors were ARC certified
13   lifeguards, had ARC water safety training as established by the ARC guidelines and written
14   manuals, and were certified in CPR, AED, and First Aid training so that PLAINTIFFS would feel safe
15   in enrolling their 6-year-old non swimmer, ROXIE, in Summerkids Camp and pay for her tuition
16   for the camp.

17        132.    PLAINTIFFS reasonably relied on Defendants THE DIMASSAS, The DIMASSA
18   ENTITIES, CERVANTES, ARC, SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50 representation
19   that the SUMMERKIDS, INC. employees and/or contractors were ARC certified lifeguards, had
20   ARC water safety training as established by the ARC guidelines and written manuals and were
21   certified in CPR, AED, and First Aid training.
22

23        133.    As a result of the representations made by Defendants THE DIMASSAS, The
24   DIMASSA ENTITIES, CERVANTES, ARC, SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50,
25   Plaintiffs enrolled ROXIE in the Summerkids Camp and paid ROXIE'S tuition for the camp.
26

27        134.    Because the employees of THE DIMASSAS, The DIMASSA ENTITIES, and
28   SUMMERKIDS, INC. had not been properly trained in water safety, lifeguarding, CPR, AED, and

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

First Aid by CERVANTES, ARC, BOREHAM, LSC and DOES 21-50 which at all times Defendants THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC, SUMMERKIDS, INC. BOREHAM, LSC were aware and concealed from the PLAINTIFFS, the PLAINTIFFS were harmed.

135.   PLAINTIFFS' reliance on Defendants THE DIMASSAS, The DIMASSA ENTITIES, CERVANTES, ARC, SUMMERKIDS, INC., BOREHAM, LSC and DOES 1-50's representation was a substantial factor in causing PLAINTIFFS' harm. Had PLAINTIFFS known the truth that the SUMMERKIDS, INC. camp employees were not properly trained in water safety, ARC lifeguarding, CPR, AED, nor First Aid, PLAINTIFFS would have never entrusted their non-swimmer 6-year-old daughter, ROXIE, to S[UMMERKIDS, INC. camp, and she would still be alive. PLAINTIFFS therefore request all damages available to them under this cause of action, including punitive damages.

### PRAYER FOR RELIEF

Wherefore, PLAINTIFFS pray for judgment against DEFENDANTS, and DOES 1-50, and each of them, as follows:

On all Causes of Action

1. For past and future special damages;

2. For past and future general damages;

3. For interest allowable by law;

4. For costs of suit incurred herein;

5. For such other and further relief as the court may deem proper;

6. For medical, burial, celebration of life, and related expenses according to proof; and

7. For punitive damages.

DATED: April 1, 2021                          LAW OFFICES OF VICTOR L. GEORGE

By: _____
VICTOR L. GEORGE
MEYLIN P. ALFARO
Attorneys for PLAINTIFFS

50

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

2 **DEMAND FOR JURY TRIAL**

3     PLAINTIFFS hereby demand, as a matter of right, trial by jury in this case on all causes of

4 action.

5 DATED: April 1, 2021                  LAW OFFICES OF VICTOR L. GEORGE

6

7                              By: _____

8                                 VICTOR L. GEORGE
                                MEYLIN P. ALFARO

9                                 Attorneys for PLAINTIFFS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

PROOF OF SERVICE - 1013a, 2015.5, 2015 C.C.P.

CASE NAME: MATYAS v. SUMMERKIDS
CASE NUMBER: 19STCV39732

State of California            }
County of Los Angeles        }      ss:

      I am over the age of 18 years, am employed in the aforesaid county and am not a party to the action or proceeding, and my business address is 20355 Hawthorne Blvd., First Floor, Torrance, CA 90503.

On April 1, 2021, I served: **SECOND AMENDED COMPLAINT FOR DAMAGES:**
               **1. NEGLIGENCE – WRONGFUL DEATH**
               **2. NELIGENT HIRING, RETENTION, SUPERVISION, AND**
                   **TRAINING**
               **3. SURVIVOR'S ACTION**
               **4. FRAUD**
            **DEMAND FOR JURY TRIAL**

on the interested parties in the action, as follows:
               **SEE ATTACHED SERVICE LIST**

  ✓    ELECTRONIC TRANSMISSION. By e-mailing the document(s) to the e-mail address(es) on the attached service list. This is necessitated during the declared National Emergency due to the Coronavirus (Covid-19) pandemic. Because this office will be working remotely, and therefore not able to send physical mail as usual, this office is using electronic mail only, or in addition to other delivery methods as available. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

      BY OVERNIGHT DELIVERY  I caused such document(s) to be delivered via overnight service by FedEx Delivery Service.

  X  (State) I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

      Executed on April 1, 2021, at Los Angeles, California

                *Gabriela Gutierrez*
                 Gabriela Gutierrez

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

CASE NAME: Matyas v. Summerkids
CASE NUMBER: 19STCV39732

| | |
|---|---|
| Margaret M. Holm, Esq.<br>Sheryl M. Rosenberg, Esq.<br>Stephanie R. Perez, Esq.<br>**CLYDE & CO US LLP**<br>2020 Main Street., Suite 1100<br>Irvine, California 92614<br><br>margaret.holm@clydeco.us<br>sheryl.rosenberg@clydeco.us<br>stephanie.perez@clydeco.us<br>angelo.mccabe@clydeco.us<br>sharon.oconnell@clydeco.us<br>Lorraine.gallo@clydeco.us | Attorneys for Defendants<br>**SUMMERKIDS, INC.**<br>**MARIA DIMASSA**<br>**JOSEPH DIMASSA**<br>**CARA DIMASSA**<br>**GIANCARLO DIMASSA, M.D.**<br>**ANGELUS MOUNTAIN CENTER**<br>**THE ENOTECA, LLC, AKA THE ENOTECA, LLC**<br>**SEMPRE AVANTI, LLC,**<br>**THE DIMASSA FAMILY FOUNDATION**<br>**DANIEL H. RAINEY**<br>**FAITH PORTER**<br>**JOSEPH NATALIZIO** |
| Mary M. Campo, Esq.<br>HOSP, GILBERT & BERGSTEN<br>301 N. Lake Ave., Ste 410<br>Pasadena, CA 91101<br><br>rbergsten@hosplaw.com<br>mcampo@hosplaw.com<br>tmouradian@hosplaw.com | Attorneys for Defendant<br>**JAIMI HARRISON** |
| **Andrew Lara Cervantes**<br>5307 Edna Street<br>Los Angeles, CA 90032<br><br>drewc709@gmail.com | Defendant |

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

# EXHIBIT 3

Electronically FILED by Superior Court of California, County of Los Angeles on 11/05/2019 03:21 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk

| | **CM-010** |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>— Laura Lynn Davidson (SBN 209969), Jubin J. Niamehr (SBN 266794)<br>Talia Yektafar (SBN 324309)<br>JACOBY & MEYERS ATTORNEYS LLP<br>10900 Wilshire Boulevard, 15th Floor, Los Angeles, CA 90024<br>TELEPHONE NO.: 310-312-3300    FAX NO.: 310-715-8331<br>ATTORNEY FOR *(Name):* Plaintiffs, Elena Matyas, et al. | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 312 North Spring Street
MAILING ADDRESS: 312 North Spring Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Spring Street Courthouse

CASE NAME:
Matyas, et al. v. Summerkids, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✓ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
✓ Medical malpractice (45)
✓ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ✓ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 3 (Negligence - Wrongful Death; Negligent Hiring; Survivor's Action)
5. This case ☐ is  ✓ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 5, 2019

Laura Lynn Davidson
_____
(TYPE OR PRINT NAME)          ► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box for the case type** that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer*
            *or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
        *domain, landlord/tenant, or*
        *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-*
        *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
        *harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

EXHIBIT 4

| SHORT TITLE:<br>Matyas, et al. v. Summerkids, Inc., et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10-14 ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☑ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Matyas, et al. v. Summerkids, Inc., et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐  A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐  A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐  A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐  A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐  A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐  A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐  A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐  A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐  A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐  A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐  A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐  A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐  A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐  A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐  A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐  A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐  A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐  A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐  A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐  A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐  A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐  A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐  A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐  A6032  Quiet Title | 2., 6. |
| | | ☐  A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐  A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐  A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐  A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐  A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Matyas, et al. v. Summerkids, Inc., et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE:  Matyas, et al. v. Summerkids, Inc., et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.  ☐1. ☑2. ☐3. ☑4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:  3697 N. Fair Oaks Avenue |
|---|---|

| CITY:  Altadena | STATE:  CA | ZIP CODE:  91001 |
|---|---|---|

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Spring Street___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 11/5/2019

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

EXHIBIT 5

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>11/05/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Marita P. Barel _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>19STCV39732 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Jon R. Takasugi | 3 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

Sherri R. Carter, Executive Officer / Clerk of Court

on 11/05/2019
  (Date)

By Marita P. Barel _____ , Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev. 6/13)                   **NOTICE OF CASE ASSIGNMENT — UNLIMITED CIVIL CASE**

EXHIBIT 6

2018-SJ-007-00

FILED
Superior Court of California
County of Los Angeles

APR 16 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Stephanie Chung

1
2
3
4  SUPERIOR COURT OF THE STATE OF CALIFORNIA
5  FOR THE COUNTY OF LOS ANGELES
6
7  IN RE PERSONAL INJURY          ) CASE NO.:
   COURT ("PI COURT") PROCEDURES, )
8  CENTRAL DISTRICT               ) STANDING ORDER RE: PERSONAL
   (EFFECTIVE APRIL 16, 2018)     ) INJURY PROCEDURES, CENTRAL
9                                 ) DISTRICT
                                  )
10                                )
                                  )
11 _____)
12
13 | **DEPARTMENT:**   2   3   4   5   7
14 | **FINAL STATUS CONFERENCE ("FSC"):**
15 |   • **DATE:** _____ AT 10:00 A.M.
16 |
17 |   **TRIAL:**
18 |   • **DATE:** _____ AT 8:30 A.M.
19 | **OSC RE DISMISSAL (CODE CIV. PROC. § 583.210):**
20 |   • **DATE:** _____ AT 8:30 A.M.
21
22  TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:
23      Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules
24  of Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los
25  Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES
26  THE AUGUST 10, 2017 SEVENTH AMENDED GENERAL ORDER AND, GENERALLY,
27  ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION
28  PERSONAL INJURY ACTIONS FILED IN THE CENTRAL DISTRICT.

Page 1 of 8

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1.   To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

"an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition."   (Local Rule 2.3(a)(1)(A).)

Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death

A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

A7260 Product Liability (not asbestos or toxic/environmental)

A7210 Medical Malpractice – Physicians & Surgeons

A7240 Medical Malpractice – Other Professional Health Care Malpractice

A7250 Premises Liability (e.g., slip and fall)

A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

///

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1       The Court sets the above dates in this action in the PI Court circled above (Department

2   2, 3, 4, 5, or 7) at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA 90012.

3   (C.R.C. Rules 3.714(b)(3), 3.729.)

4   FILING OF DOCUMENTS

5   2.       Parties may file documents in person at the filing window on the first floor of the Stanley

6   Mosk Courthouse (111 N. Hill Street, Los Angeles, CA 90012) or by U.S. Mail or e-Delivery,

7   which is available online at www.lacourt.org (link on homepage). Please note that filings are no

8   longer accepted via facsimile and must be filed either in person, via U.S. mail or via e-Delivery.

9   Claims involving an attorney-client fee dispute, documents in which the filing party is a minor,

10   legally incompetent person, or person for whom a conservator has been appointed, requests to

11   waive court fees (FW-001) and requests for accommodations by persons with disabilities (MC-

12   410), may not be filed via e-Delivery.

13   SERVICE OF SUMMONS AND COMPLAINT

14   3.       Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as

15   soon as possible but no later than three years from the date when the complaint is filed.

16   (C.C.P. § 583.210, subd.(a).)   On the OSC re Dismissal date noted above, the PI Court will

17   dismiss the action and/or all unserved parties unless the plaintiff(s) show cause why the action

18   or the unserved parties should not be dismissed. (C.C.P. §§ 583.250; 581, subd. (b)(4).)

19   4.       The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate

20   service on defendant(s) of the summons and complaint within six months of filing the complaint.

21   5.       The PI Court will dismiss the case without prejudice pursuant to C.C.P. § 581 when no

22   party appears for trial.

23   STIPULATIONS TO CONTINUE TRIAL

24   6.       Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P.

25   § 583.310), the parties may advance or continue any trial date in the PI Courts without showing

26   good cause or articulating any reason or justification for the change.   To continue or advance a

27   trial date, the parties (or their counsel of record) should jointly execute and submit (at the filing

28   window on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery; fee

Page 3 of 8

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-00

1  required) a Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form
2  LACIV CTRL-242, available on the court's website, Personal Injury Court link). The PI Courts
3  schedule FSCs for 10:00 a.m., eight (8) court days before the trial date.  Parties seeking to
4  continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC
5  date.  Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight
6  court days before the proposed advanced FSC date. (C.C.P. § 595.2;  Govt. Code § 70617, subd.
7  (c)(2).) In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday
8  following a court holiday.  Parties may submit a maximum of two stipulations to continue trial,
9  for a total continuance of six months. Subsequent requests to continue trial will be granted upon
10  a showing of good cause by noticed motion.  This rule is retroactive so that any previously
11  granted stipulation to continue trial will count toward the maximum number of allowed
12  continuances.

13  **NO CASE MANAGEMENT CONFERENCES**

14  7.      The PI Courts do not conduct Case Management Conferences.  The parties need not file
15  a Case Management Statement.

16  **LAW AND MOTION**

17  8.      Any documents with declarations and/or exhibits must be tabbed.  (C.R.C. Rule
18  3.1110(f).)  All depositions excerpts referenced in briefs must be marked on the transcripts
19  attached as exhibits.  (C.R.C. Rule 3.1116(c).)

20  **CHAMBERS COPIES REQUIRED**

21  9.      In addition to filing original motion papers at the filing window on the first floor of the
22  Stanley Mosk Courthouse, via U.S. mail or via e-Delivery, the parties must deliver, directly to
23  the PI Court courtrooms at the Spring Street Courthouse, an extra copy (marked "Chambers
24  Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a
25  hearing calendared in the PI Courts. The PI Courts also strongly encourage the parties filing and
26  opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one
27  or more three-ring binders organizing the chambers copy behind tabs.

28  ///

2018-SJ-007-00

RESERVATION HEARING DATE

10.    Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at www.lacourt.org (link on homepage).  After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt (CRS) number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

WITHDRAWAL OF MOTIONS

11.    California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI Courts urge parties who amend pleadings in response to demurrers to file amended pleadings before the date when opposition to the demurrer is due so that the PI Courts do not needlessly prepare tentative rulings on demurrers.

DISCOVERY MOTIONS

12.    The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to resolve and/or narrow the scope of discovery disputes. Lead trial counsel on each side, or another attorney with full authority to make binding agreements, must attend in person.  The PI judges have found that, in nearly every case, the parties amicably resolve disputes with the assistance of the Court.

13.    Parties must participate in an IDC before a Motion to Compel Further Responses to Discovery will be heard unless the moving party submits evidence, by way of declaration, that the opposing party has failed or refused to participate in an IDC.  Scheduling or participating in an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for noticing and filing discovery motions. Ideally, the parties should participate in an IDC before a motion is filed because the IDC may avoid the necessity of a motion or reduce its scope. Because of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for filing a motion to compel further discovery responses in order to allow time to participate in an

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-037-00

1   IDC.

2          If parties do not stipulate to extend the deadlines, the moving party may file the motion

3   to avoid it being deemed untimely.   However, the IDC must take place before the motion is

4   heard so it is suggested that the moving party reserve a date for the motion hearing that is at least

5   60 days after the date when the IDC reservation is made.  Motions to Compel Further Discovery

6   Responses are heard at 10:00 a.m.  If the IDC is not productive, the moving party may advance

7   the hearing on a Motion to Compel Further Discovery Responses on any available hearing date

8   that complies with the notice requirements of the Code of Civil Procedure.

9   14.       Parties are directed to reserve IDC dates in the PI Courts using CRS available online at

10   www.lacourt.org (link on homepage).  Parties are to meet and confer regarding the available

11   dates in CRS prior to accessing the system.  After reserving the IDC date, the reservation

12   requestor must file in the appropriate department and serve an Informal Discovery Conference

13   Form for Personal Injury Courts, from LACIV 239 (revised 12/14 or later), at least 15 court days

14   prior to the conference and attach the CRS reservation receipt as the last page.  The opposing

15   party may file and serve a responsive IDC form, briefly setting forth that party's response, at

16   least 10 court days prior to the IDC.

17   15.       Time permitting, the PI Hub judges may be available to participate in IDCs to try to

18   resolve other types of discovery disputes.

19   **EX PARTE APPLICATIONS**

20   16.       Under the California Rules of Court, courts may only grant *ex parte* relief upon a

21   showing, by admissible evidence, that the moving party will suffer "irreparable harm,"

22   "immediate danger," or where the moving party identifies "a statutory basis for granting relief

23   *ex parte*."  (C.R.C. Rule 3.1202(c).)  The PI Courts have no capacity to hear multiple *ex parte*

24   applications or to shorten time to add hearings to their fully booked motion calendars.  The PI

25   Courts do not regard the Court's unavailability for timely motion hearings as an "immediate

26   danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte*

27   relief, the moving party should reserve the earliest available motion hearing date (even if it is

28   after the scheduled trial date) and should file a motion to continue trial.  Parties should also check

2018-SJ-007-00

1   the Court Reservation System from time to time because earlier hearing dates may become

2   available as cases settle or hearings are taken off calendar.

3   REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT

4   17.     Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C")

5   Court shall file (at the filing window on the first floor of the Stanley Mosk Courthouse, via U.S.

6   mail or via e-Delivery) and serve the Court's "Motion to Transfer Complicated Personal Injury

7   Case to Independent Calendar Court" (form LACIV 238, available on the Court's website under

8   the PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a

9   "Personal Injury" case as defined in this Order, or if it is "complicated." In determining whether

10  a personal injury case is "complicated" the PI Courts will consider, among other things, the

11  number of pretrial hearings or the complexity of issues presented.

12  18.     Parties opposing a motion to transfer have five court days to file (at the filing window

13  on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery) an Opposition

14  (using the same LACIV 238 Motion to Transfer form).

15  19.     The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court.

16  Although the parties may stipulate to transfer a case to an Independent Calendar Department, the

17  PI Courts will make an independent determination whether to transfer the case or not.

18  FINAL STATUS CONFERENCE

19  20.     Parties shall comply with the requirements of the PI Courts' "First Amended Standing

20  Order Re Final Status Conference," which shall be served with the summons and complaint.

21  JURY FEES

22  21.     Parties must pay jury fees no later than 365 calendar days after the filing of the initial

23  complaint. (C. C. P. § 631, subds. (b) and (c).)

24  JURY TRIALS

25  22.     The PI Courts do not conduct jury trials.  On the trial date, a PI Court will contact the

26  Master Calendar Court, Department One, in the Stanley Mosk Courthouse.  Department One

27  will assign cases out for trial to dedicated Civil Trial Courtrooms and designated Criminal

28  Courtrooms.

Standing Order Re Personal Injury Procedures, Central District

2018-SJ-007-0⌐

1  SANCTIONS

2  23.    The Court has discretion to impose sanctions for any violation of this general order.

3  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b).)

4

5

6  Dated: _April 16, 2018_

7                                        _Debre K. Weintraub_
                                        Debre K. Weintraub
8                                        Supervising Judge of Civil Courts
                                        Los Angeles Superior Court
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 7

2018-SJ-006-00

FILED
Superior Court of California
County of Los Angeles

APR 16 2018

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Stephanie Chung

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| In re Personal Injury Cases Assigned To the Personal Injury Courts (Departments 2, 3, 4, 5 and 7 of the Spring Street Courthouse) | FIRST AMENDED STANDING ORDER – RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS (Effective as of April 16, 2018) |

The dates for Trial and Final Status Conference ("FSC") having been set in this matter, the Court HEREBY AMENDS AND SUPERSEDES ITS JANUARY 2, 2018 STANDING ORDER–RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS AND, GENERALLY, ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:

1.    PURPOSE OF THE FSC

The purpose of the FSC is to verify that the parties/counsel are completely ready to proceed with trial continuously and efficiently, from day to day, until verdict. The PI Courts will verify at the FSC that all parties/counsel have (1) prepared the Exhibit binders and Trial Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal issues, motions in limine, and the authentication and admissibility of exhibits.

///
///

Page 1 of 5

2.    TRIAL DOCUMENTS TO BE FILED

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file (in Room 102 of the Stanley Mosk Courthouse or by e-Delivery) the following Trial Readiness Documents:

A.    TRIAL BRIEFS (OPTIONAL)

Each party/counsel may file, but is not required to file, a trial brief succinctly identifying:

(1) the claims and defenses subject to litigation;

(2) the major legal issues (with supporting points and authorities);

(3) the relief claimed and calculation of damages sought; and

(4) any other information that may assist the court at trial.

B.    MOTIONS IN LIMINE

Before filing motions in limine, the parties/counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a).  The caption of each motion in limine shall concisely identify the evidence that the moving party seeks to preclude.  Parties filing more than one motion in limine shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

C.    JOINT STATEMENT TO BE READ TO THE JURY

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury.  Local Rule 3.25(g)(4).

D.    JOINT WITNESS LIST

The parties/counsel shall work together to prepare and file a joint list of all witnesses in alphabetical order by last name that each party intends to call (excluding impeachment and rebuttal witnesses).  Local Rule 3.25(g)(5). The joint witness list shall identify each witness by name, specify which witnesses are experts, and estimate the length of the direct, cross examination and re-direct examination (if any) of each witness.  The

Page 2 of 5

1  parties/counsel shall identify all potential witness scheduling issues and special
2  requirements.  Any party/counsel who seeks to elicit testimony from a witness not identified
3  on the witness list must first make a showing of good cause to the trial court.
4        E.      LIST OF PROPOSED JURY INSTRUCTIONS
5                (JOINT AND CONTESTED)
6        The parties/counsel shall jointly prepare and file a list of proposed jury
7  instructions, organized in numerical order, specifying the instructions upon which all sides
8  agree and the contested instructions, if any.  The List of Proposed Jury Instructions must
9  include a space by each instruction for the judge to indicate whether the instruction was
10  given.
11        F.      JURY INSTRUCTIONS
12                (JOINT AND CONTESTED)
13        The parties/counsel shall prepare a complete set of full-text proposed jury
14  instructions, editing all proposed California Civil Jury Instructions ("CACI") and insert party
15  name(s) and eliminate blanks and irrelevant material.  The parties/counsel shall prepare
16  special instructions in a format ready for submission to the jury with the instruction number,
17  title, and text only (i.e., there should be no boxes or other indication on the printed
18  instruction itself as to the requesting party).
19        G.      JOINT VERDICT FORM(S)
20        The parties/counsel shall prepare and jointly file a proposed general verdict
21  form or special verdict form (with interrogatories) acceptable to all sides.  Local Rule
22  3.25(g)(6).  If the parties/counsel cannot agree on a joint verdict form, each party must
23  separately file a proposed verdict form.
24        H.      JOINT EXHIBIT LIST
25        The parties/counsel shall prepare and file a joint exhibit list organized with
26  columns identifying each exhibit and specifying each party's evidentiary objections, if any, to
27  admission of each exhibit.  The parties/counsel shall meet and confer in an effort to resolve
28  objections to the admissibility of each exhibit.

FIRST AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS (Effective April 16, 2018)

I.   PAGE AND LINE DESIGNATION FOR
DEPOSITION AND FORMER TESTIMONY

If the parties/counsel intend to use deposition testimony or former trial testimony in lieu of any witness's live testimony, the parties/counsel shall meet and confer and jointly prepare and file a chart with columns for each of the following: 1) the line and page designations of the deposition or former testimony requested for use, 2) objections, 3) counter-designations, 4) any responses thereto, and 5) the Court's ruling.

3.   EVIDENTIARY EXHIBITS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at the FSC) three sets of tabbed, internally paginated by document, and properly-marked exhibits, organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the witnesses). The parties/counsel shall mark all non-documentary exhibits and insert a simple written description of the exhibit behind the corresponding numerical tab in the exhibit binder. If the parties have a joint signed exhibit list and electronic copies of their respective exhibits, then the parties/counsel will not be required to produce exhibit binders at the FSC. However, the exhibit binders may be required by the assigned trial judge when the trial commences. In the absence of either a joint signed exhibit list or electronic copies, exhibit binders will be required by all parties/counsel at the FSC.

4.   TRIAL BINDERS REQUIRED IN THE PI COURTS

The parties/counsel shall jointly prepare (and be ready to temporarily lodge and include the following for inspection at the FSC) the Trial Documents consisting of conformed copies, tabbed and organized into three-ring binders with a table of contents that includes the following:

Tab A:     Trial Briefs (Optional)
Tab B:     Motions in Limine
Tab C:     Joint Statement to Be Read to the Jury
Tab D:     Joint Witness List

///

Page 4 of 5

1   Tab E:      Joint List of Jury Instructions (identifying the agreed upon and
2   contested instructions)
3        Tab F:      Joint and Contested Jury Instructions
4        Tab G:      Joint and/or Contested Verdict Form(s)
5        Tab H:      Joint Exhibit List
6        Tab I:      Joint Chart of Page and Line Designation(s) for Deposition and Former
7   Testimony
8        Tab J:      Copies of the Current Operative Pleadings (including the operative
9   complaint, answer, cross-complaint, if any, and answer to any cross-complaint).
10        The parties/counsel shall organize motions in limine (tabbed in numerical order)
11   behind Tab B with the opposition papers and reply papers for each motion placed directly
12   behind the moving papers.  The parties shall organize proposed jury instructions behind
13   Tab F, with the agreed upon instructions first in order followed by the contested instructions
14   (including special instructions) submitted by each side.

15        5.     FAILURE TO COMPLY WITH FSC OBLIGATIONS
16        The court has discretion to require any party/counsel who fails or refuses to comply
17   with this Amended Standing Order to show cause why the Court should not impose
18   monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking
19   of an answer).

20
21
22   Dated: April 16, 2018
23                                              Debre K. Weintraub
24                                              Supervising Judge, Civil
25                                              Los Angeles Superior Court
26
27
28

FIRST AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS [Effective April 16, 2018]

EXHIBIT 8



## Superior Court of California, County of Los Angeles

---

### ALTERNATIVE DISPUTE RESOLUTION (ADR)
### INFORMATION PACKAGE

THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.

CROSS-COMPLAINANTS must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control with the parties:** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a.  **The Civil Mediation Vendor Resource List**

> Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

- JAMS, Inc.: Case Manager (213) 253-9776  mdawson@jamsadr.com
- Mediation Center of Los Angeles: Case Manager: (833) 476-9145  info@mediationLA.org

These organizations cannot accept every case and they may decline cases at their discretion.
Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
NOTE: This service is not available for family law, probate or small claims.

b.  **Los Angeles County Dispute Resolution Programs**
https://wdacs.lacounty.gov/programs/drp/
- Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
- Free or low-cost mediations before the day of trial for these and other case types.
- For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit
http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c.  Mediators and ADR and Bar organizations that provide mediation may be found on the Internet.

---

3.  **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4.  **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

Los Angeles Superior Court ADR website:  www.lacourt.org/division/civil/settlement
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# EXHIBIT 9

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )    FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____ )

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all

documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los

Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex

Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).)

All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the

following:

1) **DEFINITIONS**

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to

      quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling

      portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission

      of documents to the Court for processing which may contain one or more PDF documents

      attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a

      document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court. (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format. Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs. Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

   Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

   Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i)     Any printed document required pursuant to a Standing or General Order;

   ii)    Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii)   Pleadings and motions that include points and authorities;

   iv)    Demurrers;

   v)     Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi)    Motions for Summary Judgment/Adjudication; and

   vii)   Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  1) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED: May 3, 2019                    Kevin C. Brazile

11                                                          KEVIN C. BRAZILE
                                                            Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7
FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

# EXHIBIT 10

Español    Tiếng Việt    한국어    中文    հայերեն

**THE SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

Search

| Home | Online Services | Forms, Filings & Files | Self-Help | Divisions | Jury | General Info |
|------|-----------------|------------------------|-----------|-----------|------|--------------|
| | Pay Fines, Search Records... | Forms, Filing Fees... | Self-Rep, Info, FAQs... | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA ... |

ONLINE SERVICES

# Case Access



LANGUAGE ACCESS

English

### CASE INFORMATION

PRINT     NEW SEARCH

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** 19STCV39732
ELENA MATYAS, INDIVIDUALLY AND AS SUCCESSOR-IN- INTEREST TO ROXIE MIRABELLE FORBES, ET AL. VS SUMMERKIDS, INC., A CALIFORNIA CORPORATION, ET AL.

**Filing Courthouse:** Glendale Courthouse

**Filing Date:** 11/05/2019
**Case Type:** Other Personal Injury/Property Damage/Wrongful Death (General Jurisdiction)
**Status:** Pending

Click here to access document images for this case
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

### FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

05/26/2021 at 08:30 AM in Department D at 600 East Broadway, Glendale, CA 91206
Status Conference

07/09/2021 at 09:00 AM in Department D at 600 East Broadway, Glendale, CA 91206
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer

07/16/2021 at 09:00 AM in Department D at 600 East Broadway, Glendale, CA 91206
Hearing on Motion to Strike without Demurrer Portions of Plaintiffs' Second Amended Complaint filed on behalf of Summerkids, Inc., et al.

07/16/2021 at 09:00 AM in Department D at 600 East Broadway, Glendale, CA 91206
Hearing on Demurrer - with Motion to Strike (CCP 430.10)

09/02/2021 at 08:30 AM in Department D at 600 East Broadway, Glendale, CA 91206
Order to Show Cause Re: Re Mandatory Settlement Conference Readiness

11/12/2021 at 09:00 AM in Department D at 600 East Broadway, Glendale, CA 91206
Hearing on Motion for Summary Judgment

12/02/2021 at 09:00 AM in Department D at 600 East Broadway, Glendale, CA 91206
Final Status Conference

12/13/2021 at 09:00 AM in Department D at 600 East Broadway, Glendale, CA 91206

Case 2:21-cv-04163-JAK-JDE   Document 1-1   Filed 05/19/21   Page 97 of 111   Page ID
#:102

Jury Trial

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
A - J   N - Y

ALFARO MEYLIN PATRICIA - Attorney for Plaintiff

ANGELUS MOUNTAIN CENTER ENTITY TYPE UNKNOWN - Defendant

BERGSTEN ROBERT - Attorney for Defendant

CAMPO MARY MICHELE - Attorney for Defendant

CERVANTES AN INDIVIDUAL ANDREW LARA - Defendant

DIMASSA AN INDIVIDUAL CARA - Defendant

DIMASSA AN INDIVIDUAL GIANCARLO MD - Defendant

DIMASSA AN INDIVIDUAL JOSEPH - Defendant

DIMASSA AN INDIVIDUAL MARIA - Defendant

DIMASSA FAMILY TRUST - Non-Party

DIMASSA FAMILY TRUST DOE 1 - Defendant

DOSSETT DIMASSA MD INC. - Defendant

DOUGLAS FORBES INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ROXIE MIRABELLE FORBES - Plaintiff

ELENA MATYAS INDIVIDUALLY AND AS SUCCESSOR-IN- INTEREST TO ROXIE MIRABELLE FORBES - Plaintiff

GEORGE VICTOR LIGHT - Attorney for Plaintiff

GIANCARLO DIMASSA MD INC. - Defendant

HARRISON AN INDIVIDUAL JAIMI - Defendant

HOLM MARGARET M - Attorney for Defendant

HOLM MARGARET MANTON - Attorney for Defendant

JOSEPH DIMASSA AND MARIA DIMASSA AS TRUSTEES OF THE DIMASSA FAMILY TRUST TRUST DATED APRIL 9 1981 - Defendant

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   A - J   N - Y

NATALIZIO AN INDIVIDUAL JOSEPH - Defendant

PORTER AN INDIVIDUAL FAITH - Defendant

RAINEY AN INDIVIDUAL DANIEL H. - Defendant

ROSENBERG SHERYL M. - Attorney for Defendant

SEMPRE AVANTI LLC AND CALIFORNIA LIMITED LIABILITY COMPANY - Defendant

SUMMERKIDS INC. A CALIFORNIA CORPORATION - Defendant

THE DIMASSA FAMILY FOUNDATION A 501C3 CORPORATION - Defendant

THE ENOTECA LLC A CALIFORNIA LIMITED LIABILITY COMPANY AKA THE ENOTECA LLC A CALIFORNIA LIMITED LIABILITY COMPANY - Defendant

YEKTAFAR TALIA - Attorney for Plaintiff

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   A - J   N - Y

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Documents Filed (Filing dates listed in descending order)**
Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
12/29/2020   07/14/2020

**05/17/2021** Answer
Filed by SUMMERKIDS., INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual

(Defendant) et al.

**05/17/2021** Substitution of Attorney
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**05/13/2021** Substitution of Attorney
Filed by DANIEL H. RAINEY, an individual (Defendant)

**05/13/2021** Substitution of Attorney
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**05/11/2021** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/11/2021** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/11/2021** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/07/2021** Notice (Plaintiffs' Notice of Association of Counsel)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/06/2021** Case Management Statement
Filed by JAIMI HARRISON, an individual (Defendant)

**05/04/2021** Substitution of Attorney
Filed by THE DIMASSA FAMILY FOUNDATION, a 501(c)(3) corporation (Defendant)

**05/04/2021** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/04/2021** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/04/2021** Substitution of Attorney
Filed by MARIA DIMASSA, an individual (Defendant)

**05/04/2021** Substitution of Attorney
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**05/04/2021** Substitution of Attorney
Filed by JOSEPH DIMASSA, an individual (Defendant)

**05/04/2021** Substitution of Attorney
Filed by GIANCARLO DIMASSA, an individual, MD (Defendant)

**05/04/2021** Substitution of Attorney
Filed by THE ENOTECA, LLC, a California Limited Liability Company (Defendant)

**05/03/2021** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JAIMI HARRISON, an individual (Defendant)

**04/28/2021** Declaration (DECLARATION OF MARGARET M. HOLM, ESQ., PURSUANT TO CODE OF CIVIL PROCEDURE 430.41, 435.5)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**04/14/2021** Summons (on Complaint (1st))
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**04/02/2021** Notice of Ruling
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**04/02/2021** Minute Order ( Hearing on Motion for Leave to File Second Amended Complaint ...))
Filed by Clerk

**04/02/2021** Second Amended Complaint
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**03/25/2021** Reply (REPLY TO DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**03/19/2021** Notice of Joinder (Name Extension) (TO DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT)
Filed by JAIMI HARRISON, an individual (Defendant)

03/19/2021 Declaration (DECLARATION OF DEFENDANT GIANCARLO DIMASSA IN SUPPORT OF DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

03/19/2021 Opposition (DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; DECLARATION OF SHERYL ROSENBERG)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

03/05/2021 Motion for Leave to File Second Amended Complaint
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

03/01/2021 Minute Order ( ( Status Conference re Second Amended Complaint and Demurrer/Mo...))
Filed by Clerk

02/24/2021 Minute Order ( ( Status Conference re Second Amended Complaint and Demurrer/Mo...))
Filed by Clerk

02/11/2021 Minute Order ( ( Trial Setting Conference; Status Conference Re Second Amended...))
Filed by Clerk

02/11/2021 Notice of Ruling
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

02/10/2021 Substitution of Attorney
Filed by DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

02/10/2021 Substitution of Attorney
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

02/01/2021 Notice of Ruling
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

02/01/2021 Minute Order ( ( Status Conference))
Filed by Clerk

01/15/2021 Case Management Statement
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

12/31/2020 Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JAIMI HARRISON, an individual (Defendant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   12/29/2020   07/14/2020

12/29/2020 Motion to Strike (not initial pleading)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

12/29/2020 Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JAIMI HARRISON, an individual (Defendant)

12/29/2020 Answer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

12/21/2020 Demurrer - with Motion to Strike (CCP 430.10)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

12/21/2020 Motion to Strike (not initial pleading)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

12/11/2020 Minute Order ( ( Status Conference re: Complicated ?PI? Case Transferred from ...))
Filed by Clerk

12/07/2020 Opposition (Opposition To Motion To Compel Deposition)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

11/30/2020 Declaration (Declaration Pursuant to Code of Civil Procedure)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

11/30/2020 Declaration (Declaration of Mary M. Campo Pursuant to Code of Civil Procedure ¿ 435.5)
Filed by JAIMI HARRISON, an individual (Defendant)

11/25/2020 Case Management Statement
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

11/25/2020 Case Management Statement

Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/24/2020** Case Management Statement
Filed by JAIMI HARRISON, an individual (Defendant)

**11/09/2020** Notice (OF TAKING DEMURRER AND MOTION TO STRIKE FILED BY DEFENDANT DIMASSA FAMILY TRUST OFF CALENDAR)
Filed by DiMassa Family Trust (Non-Party)

**10/30/2020** Amended Complaint ( (1st))
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**10/30/2020** Notice of Ruling
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**10/16/2020** Minute Order ( (Hearing on Demurrer - with Motion to Strike (CCP 430.10) Port...))
Filed by Clerk

**10/06/2020** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by Clerk

**10/02/2020** Minute Order ( (Hearing on Motion to Strike (not anti-SLAPP) - without Demurr...))
Filed by Clerk

**09/24/2020** Reply (BRIEF IN SUPPORT OF DEFENDANT JOSEPH NATALIZIO?S MOTION TO STRIKE PORTIONS OF PLAINTIFFS? COMPLAINT)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**09/18/2020** Opposition (TO DEFENDANT JOSEPH NATALIZIO'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**09/17/2020** Case Management Statement
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**09/15/2020** Notice of Posting of Jury Fees
Filed by JAIMI HARRISON, an individual (Defendant)

**09/15/2020** Case Management Statement
Filed by JAIMI HARRISON, an individual (Defendant)

**09/14/2020** Notice of Posting of Jury Fees
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**09/11/2020** Case Management Statement
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**09/11/2020** Demurrer - with Motion to Strike (CCP 430.10)
Filed by DiMassa Family Trust (Doe 1) (Defendant)

**09/11/2020** Motion to Strike (not initial pleading)
Filed by DiMassa Family Trust (Doe 1) (Defendant)

**08/27/2020** Motion to Compel (Deposition of Defendant Faith Porter)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**07/16/2020** Notice (of New Date for the Hearing)
Filed by GIANCARLO DIMASSA, an individual, MD (Defendant); ANGELUS MOUNTAIN CENTER, entity type unknown (Defendant); THE ENOTECA, LLC, a California Limited Liability Company (Defendant) et al.

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   12/29/2020   07/14/2020

**07/14/2020** Certificate of Mailing for ((Non-Appearance Case Review - COURT ORDER ADVANCING AND CONTIN...) of 07/14/2020)
Filed by Clerk

**07/14/2020** Minute Order ( (Non-Appearance Case Review - COURT ORDER ADVANCING AND CONTIN...))
Filed by Clerk

**05/21/2020** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**04/06/2020** Notice of Ruling
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**04/03/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Continuing Civil, Tria...) of 04/03/2020)
Filed by Clerk

**04/03/2020** Minute Order ( (Non-Appearance Case Review Court Order Continuing Civil, Tria...))

Filed by Clerk

**03/26/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Advancing Continuing C...) of 03/26/2020)
Filed by Clerk

**03/26/2020** Minute Order ( (Non-Appearance Case Review Court Order Advancing Continuing C...))
Filed by Clerk

**03/06/2020** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JOSEPH NATALIZIO, an individual (Defendant)

**03/06/2020** Answer
Filed by JOSEPH DIMASSA, an individual (Defendant)

**03/02/2020** Substitution of Attorney
Filed by JAIMI HARRISON, an individual (Defendant)

**03/02/2020** Order on Court Fee Waiver (Superior Court)
Filed by Clerk

**03/02/2020** Answer
Filed by ANDREW LARA CERVANTES, an individual (Defendant)

**02/28/2020** Certificate of Mailing for ((Non-Appearance Case Review - Court Order setting a Status Con...) of 02/28/2020)
Filed by Clerk

**02/28/2020** Minute Order ( (Non-Appearance Case Review - Court Order setting a Status Con...))
Filed by Clerk

**02/21/2020** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**02/13/2020** Certificate of Mailing for ((Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer) of 02/13/2020)
Filed by Clerk

**02/13/2020** Minute Order ( (Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer))
Filed by Clerk

**02/13/2020** Order (Transferring Complicated Personal Injury (PI) Case to an Independent Calendar (IC) Court)
Filed by Clerk

**02/05/2020** Reply (Reply Brief in support of Motion to Strike)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**01/30/2020** Opposition (to Defendants Motion to Strike Portions of Plaintiffs Complaint)
Filed by ELENA MATYAS, individually and as Successor- in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**01/21/2020** Request for Refund / Order
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**01/10/2020** Answer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**01/10/2020** Declaration (Pursuant To Code Of Of Civil Procedure)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**01/10/2020** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/10/2019** Declaration (Of Sheryl Rosenberg Pursuant to Code of Civil Procedure 435.5)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/02/2019** Certificate of Mailing for ([PI General Order], Standing Order re PI Procedures and Hearing Dates)
Filed by Clerk

**12/02/2019** PI General Order
Filed by Clerk

**11/21/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/21/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service

Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Mailing (Substituted Service)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/06/2019** Notice of Posting of Jury Fees
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**11/05/2019** Civil Case Cover Sheet
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Summons (on Complaint)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Complaint
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   12/29/2020   07/14/2020

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Proceedings Held (Proceeding dates listed in descending order)**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
07/14/2020

**05/04/2021** at 08:30 AM in Department 31, Thomas D. Long, Presiding
Non-Jury Trial - **Not Held - Advanced and Vacated**

**04/30/2021** at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendant Joseph Dimassa and Maria Dimassa as Trustees of the Dimassa Family Trust) - **Not Held - Advanced and Vacated**

**04/30/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (Portions of Plaintiffs' First Amended Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Not Held - Advanced and Vacated**

**04/30/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendant Jaimi Harrison) - **Not Held - Advanced and Vacated**

**04/20/2021** at 10:00 AM in Department 31, Thomas D. Long, Presiding
Final Status Conference - **Not Held - Advanced and Vacated**

**04/16/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Taken Off Calendar by Party**

**04/02/2021** at 09:00 AM in Department D
Hearing on Motion for Leave (to File Second Amended Complaint filed on behalf of Plaintiffs Elena Matyas, et al.) - **Held - Motion Granted**

**03/12/2021** at 09:00 AM in Department D

Case 2:21-cv-04163-JAK-JDE    Document 1-1    Filed 05/19/21    Page 103 of 111    Page ID #:108

Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendant Joseph Dimassa and Maria Dimassa as Trustees of the Dimassa Family Trust) - **Not Held - Advanced and Continued - by Court**

03/12/2021 at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendant Jaimi Harrison) - **Not Held - Advanced and Continued - by Court**

03/12/2021 at 09:00 AM in Department D
Hearing on Motion to Strike (Portions of Plaintiffs' First Amended Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Not Held - Advanced and Continued - by Court**

03/02/2021 at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - **Not Held - Clerical Error**

03/01/2021 at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - **Held**

03/01/2021 at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - **Not Held - Continued - Court's Motion**

02/24/2021 at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - **Not Held - Continued - Party's Motion**

02/11/2021 at 08:30 AM in Department D
Trial Setting Conference - **Held**

02/11/2021 at 08:30 AM in Department D
Status Conference (Re Second Amended Complaint and Demurrer/Motion to Strike) - **Held - Continued**

02/05/2021 at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Form Interrogatories) - **Not Held - Continued - Court's Motion**

02/05/2021 at 09:00 AM in Department D
Hearing on Motion to Strike (First Amended Complaint) - **Not Held - Advanced and Continued - by Court**

02/05/2021 at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Special Interrogatories) - **Not Held - Continued - Court's Motion**

02/05/2021 at 09:00 AM in Department D
Hearing on Motion to Compel (Further Deposition of Defendant Daniel H. Rainey filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

02/01/2021 at 08:30 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Held**

12/18/2020 at 09:00 AM in Department D
Hearing on Motion to Compel (Deposition of Defendant Faith Porter filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

12/11/2020 at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc.) - **Not Held - Taken Off Calendar by Party**

12/11/2020 at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Held - Continued**

12/11/2020 at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Special Interrogatories) - **Not Held - Taken Off Calendar by Party**

12/11/2020 at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Form Interrogatories) - **Not Held - Taken Off Calendar by Party**

12/11/2020 at 09:00 AM in Department D
Hearing on Motion - Other (to Amend the Complaint filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

11/06/2020 at 09:00 AM in Department D
Hearing on Motion to Compel (Further Deposition Testimony from Witness Natalie Del Castillo filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

10/30/2020 at 09:00 AM in Department D
Hearing on Motion to Compel (Deposition of Defendant Jaimi Harrison filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

10/16/2020 at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc.) - **Not Held - Advanced and Continued - by Court**

10/16/2020 at 09:00 AM in Department D
Informal Discovery Conference (IDC) - **Not Held - Taken Off Calendar by Party**

10/02/2020 at 09:00 AM in Department D

Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Held - Motion Granted**

**10/02/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Not Held - Continued - Court's Motion**

**08/07/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Not Held - Continued - Court's Motion**

**08/07/2020** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Not Held - Continued - Court's Motion**

**07/24/2020** at 08:30 AM in Department D
Informal Discovery Conference (IDC) - **Not Held - Rescheduled by Party**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   07/14/2020

**07/14/2020** at 08:30 AM in Department D
Non-Appearance Case Review (- COURT ORDER ADVANCING AND CONTINUING CASES SET ON A DARK DATE (8/07/2020);) - **Held**

**06/05/2020** at 08:30 AM in Department D
Informal Discovery Conference (IDC) - **Not Held - Rescheduled by Party**

**05/15/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse, Department 31;) - **Not Held - Advanced and Continued - by Court**

**05/15/2020** at 08:30 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Advanced and Continued - by Court**

**04/14/2020** at 08:30 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse, Department 31;) - **Not Held - Advanced and Continued - by Court**

**04/03/2020** at 08:30 AM in Department D
Non-Appearance Case Review (Court Order Continuing Civil, Trial and Non-Trial matters to and after May 18, 2020 Pursuant to the General Order issued by the Presiding Judge;) - **Held**

**03/26/2020** at 08:30 AM in Department D
Non-Appearance Case Review (Court Order Advancing Continuing Cases Pursuant to General Order and Amended General Order issued by Presiding Judge and the Supervising Senior Administrator North East District - Pasadena) - **Not Held - Advanced and Continued - by Court**

**02/28/2020** at 08:30 AM in Department D
Non-Appearance Case Review (- Court Order setting a Status Conference on a Complicated ?PI? Case Transferred from Spring Street Courthouse Department 31) - **Held**

**02/13/2020** at 1:30 PM in Department 3, Holly E. Kendig, Presiding
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Rescheduled by Court**

**02/13/2020** at 1:30 PM in Department 31, Thomas D. Long, Presiding
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Taken Off Calendar by Court**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   07/14/2020

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Register of Actions (Listed in descending order)**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
02/11/2021   09/24/2020   02/28/2020

**05/17/2021** Answer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**05/17/2021** Substitution of Attorney
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**05/13/2021** Substitution of Attorney
Filed by DANIEL H. RAINEY, an individual (Defendant)

**05/13/2021** Substitution of Attorney
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**05/11/2021** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as

Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/11/2021** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/11/2021** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/07/2021** Notice (Plaintiffs' Notice of Association of Counsel)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/06/2021** Case Management Statement
Filed by JAIMI HARRISON, an individual (Defendant)

**05/04/2021** at 08:30 AM in Department 31, Thomas D. Long, Presiding
Non-Jury Trial - **Not Held - Advanced and Vacated**

**05/04/2021** Substitution of Attorney
Filed by JOSEPH DIMASSA, an individual (Defendant)

**05/04/2021** Substitution of Attorney
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**05/04/2021** Substitution of Attorney
Filed by THE ENOTECA, LLC, a California Limited Liability Company (Defendant)

**05/04/2021** Substitution of Attorney
Filed by THE DIMASSA FAMILY FOUNDATION, a 501(c)(3) corporation (Defendant)

**05/04/2021** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/04/2021** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/04/2021** Substitution of Attorney
Filed by GIANCARLO DIMASSA, an individual, MD (Defendant)

**05/04/2021** Substitution of Attorney
Filed by MARIA DIMASSA, an individual (Defendant)

**05/03/2021** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JAIMI HARRISON, an individual (Defendant)

**04/30/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (Portions of Plaintiffs' First Amended Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Not Held - Advanced and Vacated**

**04/30/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendant Jaimi Harrison) - **Not Held - Advanced and Vacated**

**04/30/2021** at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendant Joseph Dimassa and Maria Dimassa as Trustees of the Dimassa Family Trust) - **Not Held - Advanced and Vacated**

**04/28/2021** Declaration (DECLARATION OF MARGARET M. HOLM, ESQ., PURSUANT TO CODE OF CIVIL PROCEDURE 430.41, 435.5)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**04/20/2021** at 10:00 AM in Department 31, Thomas D. Long, Presiding
Final Status Conference - **Not Held - Advanced and Vacated**

**04/16/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Taken Off Calendar by Party**

**04/14/2021** Summons (on Complaint (1st))
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**04/02/2021** at 09:00 AM in Department D
Hearing on Motion for Leave (to File Second Amended Complaint filed on behalf of Plaintiffs Elena Matyas, et al.) - **Held - Motion Granted**

**04/02/2021** Second Amended Complaint
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**04/02/2021** Notice of Ruling
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**04/02/2021** Minute Order ( (Hearing on Motion for Leave to File Second Amended Complaint ...))
Filed by Clerk

**03/25/2021** Reply (REPLY TO DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**03/19/2021** Notice of Joinder (Name Extension) (TO DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT)
Filed by JAIMI HARRISON, an individual (Defendant)

**03/19/2021** Declaration (DECLARATION OF DEFENDANT GIANCARLO DIMASSA IN SUPPORT OF DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**03/19/2021** Opposition (DEFENDANTS? OPPOSITION TO PLAINTIFFS? MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; DECLARATION OF SHERYL ROSENBERG)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**03/12/2021** at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendant Joseph Dimassa and Maria Dimassa as Trustees of the Dimassa Family Trust) - Not Held - Advanced and Continued - by Court

**03/12/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (Portions of Plaintiffs' First Amended Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - Not Held - Advanced and Continued - by Court

**03/12/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendant Jaimi Harrison) - Not Held - Advanced and Continued - by Court

**03/05/2021** Motion for Leave to File Second Amended Complaint
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**03/02/2021** at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - Not Held - Clerical Error

**03/01/2021** at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - Not Held - Continued - Court's Motion

**03/01/2021** at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - Held

**03/01/2021** Minute Order ( (Status Conference re Second Amended Complaint and Demurrer/Mo...))
Filed by Clerk

**02/24/2021** at 08:30 AM in Department D
Status Conference (re Second Amended Complaint and Demurrer/Motion to Strike) - Not Held - Continued - Party's Motion

**02/24/2021** Minute Order ( (Status Conference re Second Amended Complaint and Demurrer/Mo...))
Filed by Clerk

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   02/11/2021   09/24/2020   02/28/2020

**02/11/2021** at 08:30 AM in Department D
Trial Setting Conference - Held

**02/11/2021** at 08:30 AM in Department D
Status Conference (Re Second Amended Complaint and Demurrer/Motion to Strike) - Held - Continued

**02/11/2021** Notice of Ruling
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**02/11/2021** Minute Order ( (Trial Setting Conference; Status Conference Re Second Amended...))
Filed by Clerk

**02/10/2021** Substitution of Attorney
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**02/10/2021** Substitution of Attorney
Filed by DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**02/05/2021** at 09:00 AM in Department D
Hearing on Motion to Strike (First Amended Complaint) - Not Held - Advanced and Continued - by Court

**02/05/2021** at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Special Interrogatories) - Not Held - Continued - Court's Motion

**02/05/2021** at 09:00 AM in Department D
Hearing on Motion to Compel (Further Deposition of Defendant Daniel H. Rainey filed on behalf of Plaintiff Elena Matyas) - Not Held - Taken Off

Calendar by Party

**02/05/2021** at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Form Interrogatories) - **Not Held - Continued - Court's Motion**

**02/01/2021** at 08:30 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Held**

**02/01/2021** Notice of Ruling
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**02/01/2021** Minute Order ( (Status Conference))
Filed by Clerk

**01/15/2021** Case Management Statement
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**12/31/2020** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JAIMI HARRISON, an individual (Defendant)

**12/29/2020** Answer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/29/2020** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JAIMI HARRISON, an individual (Defendant)

**12/29/2020** Motion to Strike (not initial pleading)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/21/2020** Motion to Strike (not initial pleading)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**12/21/2020** Demurrer - with Motion to Strike (CCP 430.10)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/18/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Deposition of Defendant Faith Porter filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

**12/11/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Form Interrogatories) - **Not Held - Taken Off Calendar by Party**

**12/11/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Held - Continued**

**12/11/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Further Response(s) from Defendant Summerkids Inc. Responses to Plaintiff Douglas Forbes' Special Interrogatories) - **Not Held - Taken Off Calendar by Party**

**12/11/2020** at 09:00 AM in Department D
Hearing on Motion - Other (to Amend the Complaint filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

**12/11/2020** at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc.) - **Not Held - Taken Off Calendar by Party**

**12/11/2020** Minute Order ( (Status Conference re: Complicated ?PI? Case Transferred from ...))
Filed by Clerk

**12/07/2020** Opposition (Opposition To Motion To Compel Deposition)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**11/30/2020** Declaration (Declaration of Mary M. Campo Pursuant to Code of Civil Procedure ¿ 435.5)
Filed by JAIMI HARRISON, an individual (Defendant)

**11/30/2020** Declaration (Declaration Pursuant to Code of Civil Procedure)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**11/25/2020** Case Management Statement
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/25/2020** Case Management Statement
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**11/24/2020** Case Management Statement

Filed by JAIMI HARRISON, an individual (Defendant)

**11/09/2020** Notice (OF TAKING DEMURRER AND MOTION TO STRIKE FILED BY DEFENDANT DIMASSA FAMILY TRUST OFF CALENDAR)
Filed by DiMassa Family Trust (Non-Party)

**11/06/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Further Deposition Testimony from Witness Natalie Del Castillo filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

**10/30/2020** at 09:00 AM in Department D
Hearing on Motion to Compel (Deposition of Defendant Jaimi Harrison filed on behalf of Plaintiff Elena Matyas) - **Not Held - Taken Off Calendar by Party**

**10/30/2020** Notice of Ruling
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**10/30/2020** Amended Complaint ( (1st))
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**10/16/2020** at 09:00 AM in Department D
Hearing on Demurrer - with Motion to Strike (CCP 430.10) (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc.) - **Not Held - Advanced and Continued - by Court**

**10/16/2020** at 09:00 AM in Department D
Informal Discovery Conference (IDC) - **Not Held - Taken Off Calendar by Party**

**10/16/2020** Minute Order ( (Hearing on Demurrer - with Motion to Strike (CCP 430.10) Port...))
Filed by Clerk

**10/06/2020** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by Clerk

**10/02/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Not Held - Continued - Court's Motion**

**10/02/2020** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Held - Motion Granted**

**10/02/2020** Minute Order ( (Hearing on Motion to Strike (not anti-SLAPP) - without Demurr...))
Filed by Clerk

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   02/11/2021   09/24/2020   02/28/2020

**09/24/2020** Reply (BRIEF IN SUPPORT OF DEFENDANT JOSEPH NATALIZIO?S MOTION TO STRIKE PORTIONS OF PLAINTIFFS? COMPLAINT)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**09/18/2020** Opposition (TO DEFENDANT JOSEPH NATALIZIO'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**09/17/2020** Case Management Statement
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**09/15/2020** Case Management Statement
Filed by JAIMI HARRISON, an individual (Defendant)

**09/15/2020** Notice of Posting of Jury Fees
Filed by JAIMI HARRISON, an individual (Defendant)

**09/14/2020** Notice of Posting of Jury Fees
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**09/11/2020** Motion to Strike (not initial pleading)
Filed by DiMassa Family Trust (Doe 1) (Defendant)

**09/11/2020** Demurrer - with Motion to Strike (CCP 430.10)
Filed by DiMassa Family Trust (Doe 1) (Defendant)

**09/11/2020** Case Management Statement
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**08/27/2020** Motion to Compel (Deposition of Defendant Faith Porter)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**08/07/2020** at 09:00 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer (Portions of Plaintiffs' Complaint filed on behalf of Defendants Summerkids, Inc., et al.) - **Not Held - Continued - Court's Motion**

**08/07/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse-Dept 31) - **Not Held - Continued - Court's Motion**

**07/24/2020** at 08:30 AM in Department D
Informal Discovery Conference (IDC) - **Not Held - Rescheduled by Party**

**07/16/2020** Notice (of New Date for the Hearing)
Filed by GIANCARLO DIMASSA, an individual, MD (Defendant); ANGELUS MOUNTAIN CENTER, entity type unknown (Defendant); THE ENOTECA, LLC, a California Limited Liability Company (Defendant) et al.

**07/14/2020** at 08:30 AM in Department D
Non-Appearance Case Review (- COURT ORDER ADVANCING AND CONTINUING CASES SET ON A DARK DATE (8/07/2020);) - **Held**

**07/14/2020** Certificate of Mailing for ((Non-Appearance Case Review - COURT ORDER ADVANCING AND CONTIN...) of 07/14/2020)
Filed by Clerk

**07/14/2020** Minute Order ( (Non-Appearance Case Review - COURT ORDER ADVANCING AND CONTIN...))
Filed by Clerk

**06/05/2020** at 08:30 AM in Department D
Informal Discovery Conference (IDC) - **Not Held - Rescheduled by Party**

**05/21/2020** Amendment to Complaint (Fictitious/Incorrect Name)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**05/15/2020** at 09:00 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse, Department 31;) - **Not Held - Advanced and Continued - by Court**

**05/15/2020** at 08:30 AM in Department D
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Advanced and Continued - by Court**

**04/14/2020** at 08:30 AM in Department D
Status Conference (reComplicated ?PI? Case Transferred from Spring Street Courthouse, Department 31;) - **Not Held - Advanced and Continued - by Court**

**04/06/2020** Notice of Ruling
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**04/03/2020** at 08:30 AM in Department D
Non-Appearance Case Review (Court Order Continuing Civil, Trial and Non-Trial matters to and after May 18, 2020 Pursuant to the General Order issued by the Presiding Judge;) - **Held**

**04/03/2020** Minute Order ( (Non-Appearance Case Review Court Order Continuing Civil, Tria...))
Filed by Clerk

**04/03/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Continuing Civil, Tria...) of 04/03/2020)
Filed by Clerk

**03/26/2020** at 08:30 AM in Department D
Non-Appearance Case Review (Court Order Advancing Continuing Cases Pursuant to General Order and Amended General Order issued by Presiding Judge and the Supervising Senior Administrator North East District - Pasadena) - **Not Held - Advanced and Continued - by Court**

**03/26/2020** Minute Order ( (Non-Appearance Case Review Court Order Advancing Continuing C...))
Filed by Clerk

**03/26/2020** Certificate of Mailing for ((Non-Appearance Case Review Court Order Advancing Continuing C...) of 03/26/2020)
Filed by Clerk

**03/06/2020** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by JOSEPH NATALIZIO, an individual (Defendant)

**03/06/2020** Answer
Filed by JOSEPH DIMASSA, an individual (Defendant)

**03/02/2020** Answer
Filed by ANDREW LARA CERVANTES, an individual (Defendant)

**03/02/2020** Order on Court Fee Waiver (Superior Court)
Filed by Clerk

**03/02/2020** Substitution of Attorney
Filed by JAIMI HARRISON, an individual (Defendant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   02/11/2021   09/24/2020   02/28/2020

**02/28/2020** at 08:30 AM in Department D
Non-Appearance Case Review (- Court Order setting a Status Conference on a Complicated ?PI? Case Transferred from Spring Street Courthouse Department 31) - **Held**

**02/28/2020** Certificate of Mailing for ((Non-Appearance Case Review - Court Order setting a Status Con...) of 02/28/2020)
Filed by Clerk

**02/28/2020** Minute Order ( (Non-Appearance Case Review - Court Order setting a Status Con...))
Filed by Clerk

**02/21/2020** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**02/13/2020** at 1:30 PM in Department 3, Holly E. Kendig, Presiding
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Rescheduled by Court**

**02/13/2020** at 1:30 PM in Department 31, Thomas D. Long, Presiding
Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer - **Not Held - Taken Off Calendar by Court**

**02/13/2020** Certificate of Mailing for ((Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer) of 02/13/2020)
Filed by Clerk

**02/13/2020** Minute Order ( (Hearing on Motion to Strike (not anti-SLAPP) - without Demurrer))
Filed by Clerk

**02/13/2020** Order (Transferring Complicated Personal Injury (PI) Case to an Independent Calendar (IC) Court)
Filed by Clerk

**02/05/2020** Reply (Reply Brief in support of Motion to Strike)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**01/30/2020** Opposition (to Defendants Motion to Strike Portions of Plaintiffs Complaint)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**01/21/2020** Request for Refund / Order
Filed by SUMMERKIDS, INC., a California Corporation (Defendant)

**01/10/2020** Motion to Strike (not anti-SLAPP) - without Demurrer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**01/10/2020** Answer
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**01/10/2020** Declaration (Pursuant to Code Of Of Civil Procedure)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/10/2019** Declaration (Of Sheryl Rosenberg Pursuant to Code of Civil Procedure 435.5)
Filed by SUMMERKIDS, INC., a California Corporation (Defendant); MARIA DIMASSA, an individual (Defendant); JOSEPH DIMASSA, an individual (Defendant) et al.

**12/02/2019** PI General Order
Filed by Clerk

**12/02/2019** Certificate of Mailing for ([PI General Order], Standing Order re PI Procedures and Hearing Dates)
Filed by Clerk

**11/21/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/21/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Mailing (Substituted Service)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Personal Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/14/2019** Proof of Service by Substituted Service
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/06/2019** Notice of Posting of Jury Fees
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Complaint
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Summons (on Complaint)
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Civil Case Cover Sheet
Filed by ELENA MATYAS, individually and as Successor-in- Interest to ROXIE MIRABELLE FORBES (Plaintiff); DOUGLAS FORBES, individually and as Successor-in-Interest to ROXIE MIRABELLE FORBES (Plaintiff)

**11/05/2019** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   02/11/2021   09/24/2020   02/28/2020

NEW SEARCH

Privacy Statement   |   Disclaimer   |   Employment   |   ADA   |   Holidays   |   Comment on our Website      Copyright © 2021 Superior Court of California, County of Los Angeles